THE OCEAN CITY RAILROAD COMPANY

*v.*

THOMAS BRAY et al.

THOMAS BRAY et al.

*v.*

THE OCEAN CITY RAILROAD COMPANY.

[Filed May 3d, 1897.]

A railroad company will not be enjoined from constructing its line across complainant's land, before condemning his interest in same, where the value of the land was nominal, and defendant had made every effort to get title thereto, and complainant had purchased it at the instance of a rival road of defendant, and with its money, and for the sole purpose of baffling defendant in the completion of its line, since an injunction does not issue as of right, and the rule that courts take no notice of the purpose in the mind of the parties in asserting or defending their rights had no application.

*Mr. Robert H. McCarter*, for the Ocean City Railroad Company.

*Mr. Henry M. Snyder, Jr.*, and *Mr. Samuel H. Grey*, for Thomas Bray et al.

REED, V. C.

These are two suits instituted practically simultaneously, one by Thomas Bray and others for the purpose of enjoining the Ocean City Railroad Company from crossing his land, before condemning his interest in the same, for the proposed route of the defendants across his premises, and the other suit by the Ocean City Railroad Company for the purpose of enjoining Mr. Bray from resisting the company's agents from constructing its road along the located route across Mr. Bray's land.

By an order made at the hearing the two suits were consolidated, and evidence taken and arguments heard at the same time in both.

Mr. Logan Bullitt and Mr. Henry Day projected a railroad to run from a point on the South Jersey railroad, a little east of Petersburgh, to Ocean City. On June 8th, 1896, the company was incorporated by filing a certificate under the General Railroad act. As I understand, most of the right of way had already been bargained for, and about three miles of the road had been built when the articles of incorporation had been filed. The agents of the promoters of the Ocean City Railroad Company were under the impression that the land now the subject of contention belonged to one Mr. Bridgewater, and they procured from him a contract to convey said land to the railroad company. Acting under their supposed rights, the agents of the railroad company entered upon the ground, placed some stakes therein and drove pilings across the thoroughfare (for the land was partly submerged), and, as Mr. Day says, placed coal and oil, for construction purposes, upon the premises.

This work began about the 1st of May, and continued until the bill in the suit by Mr. Bray was filed and the company was enjoined. The history of the title to this land now claimed by Mr. Bray seems to be this :

Mr. Fowler is the engineer who, with Mr. Loomis, located the route of the Ocean City railroad, and he is also a deputy surveyor of the board of proprietors of West Jersey. He had negotiated the contract with Mr. Bridgewater for the purchase of the *locus in quo.* Mr. Fowler became doubtful as to Bridge-

water's title to the land, and concluded that the land had never been located. He says he put in a stake on June 25th, and supposed that by that act he had, by the rules of the board of proprietors, three months to finish a survey.

When he got ready to make the survey, he started from Philadelphia for that purpose. On the same train was Mr. Haines, the surveyor-general of the board of proprietors of West Jersey, who had been employed in the interests of the West Jersey and Seashore Railroad Company to make a survey of the same land for them.

Mr. Haines went upon the ground the same night, came back the next morning, leaving others to complete the work which he had initiated.

The results of the labor of those whom he had left behind were communicated to Mr. Haines by telegraph, and from these dispatches Mr. Haines prepared a return and map, and filed the same about seven o'clock in the evening of that day.

Later in the same evening Mr. Fowler filed his return.

The survey of Mr. Haines was adopted by the board because of the priority of its filing. The return was made to one Mr. Wright, and Mr. Wright's title was conveyed to Mr. Bray. It is not denied that the return was made at the instance of the West Jersey and Seashore Railroad Company, which company had already a railroad running from Ocean City, with which the Ocean City Railroad Company would be a competing line.

Indeed it is not denied that Mr. Bray holds the title to the *locus in quo* solely as a means for baffling the Ocean City Railroad Company in completing its road. It also appears that the value of the land (about five acres) included within the right of way over the tract is merely nominal.

Counsel for Mr. Bray insist that it does not matter what his motive was in getting title to this land; that he, as owner, is entitled to the same protection against the occupation of the same by the railroad company, as any other owner would be against similar aggression.

As regards the enforcement of legal and equitable rights by an ordinary action or suit, this proposition is undoubtedly true.

Ocean City R. R. Co. v. Bray.

In respect to those actions at law wherein malice is not an essential element in the plaintiff's case, or in those suits in equity where intent does not lie at the bottom of the right to relief, the courts will take no notice of the purpose in the mind of the parties in asserting or defending such legal or equitable rights.

The right of a party to redress in such instances is *ex debito justiciæ*, and a court has no discretionary power to determine whether it will or will not award to a party his legal or equitable remedy, according to whether the party may or may not be actuated by a malicious or impolitic motive. But an injunction is an extraordinary proceeding, the propriety of the allowance of which depends upon a variety of circumstances aside from the strictly defined right of the complainant. In this respect writs of injunction are akin to those other extraordinary remedies, namely, *certiorari* and *quo warranto*. Neither of these writs is allowed as a matter of strict right. Whenever public interest may suffer, a writ of *certiorari* may be refused. *Stew. Dig. p. 119 § 16*.

The same rule applies to writs of *quo warranto*, where the motive of the defendant or the effect upon public or private interests will be considered in granting or refusing the writ. *State, ex rel. Mitchell, v. Tolan, 4 Vr. 195*.

The allowance of an injunction is a matter of discretion, and an injunction will not be granted if it will cause great injury to the defendants, without corresponding advantage to the complainant. *Stew. Dig. p. 620 §§ 7, 8, 9, 10*.

So it is perceived that whether writs of this class will be allowed depends not upon the strict right of the parties to some redress, nor upon the question whether the defendants have violated some legal right, but it depends upon whether, under the circumstances, this extraordinary process should go in the particular instance.

In the case before me the writ of injunction is asked for, to aid the complainant in protecting his lands against invasion or until an award of damage may be made and tendered.

That he has a remedy at law for such trespass is entirely clear. He can bring his action for damages, and I have no doubt he

can compel the railroad, by *mandamus,* to condemn.  Under ordinary circumstances, these remedies would be regarded as entirely adequate.  It is upon the ground that the defendant is a corporation, and as such threatens a trespass by an *extra vires* act, that such an injury is regarded as irreparable.  Under ordinary conditions it may be admitted that the fact that the defendants have made every effort to get title to the land, but have been baffled, would not be an answer to the bill.  When, however, the position of the complainant is regarded in connection with those efforts, it seems to me that it would be perverting the use of the injunction power to award to him the use of this writ.

In the first place, the ground upon which the writ is sought is illusory.  The real purpose is not to protect the complainant's land against an illegal trespass nor to compel compensation as a condition precedent to the taking.  The land is, in reality, without intrinsic value.  The placing of the railroad track upon it would produce no appreciable injury to it.  The complainant is not concerned about the injury which the placing of the road and roadbed upon the soil to which he has title would occasion. The writ is not asked for the purpose of protecting that land against such a construction.  The real purpose is to protect another railroad against the building of this road as a rival. The bill is as manifestly filed for that purpose as if it had been filed by the West Jersey and Seashore railroad to restrain the building of defendant's road.

Further than this, it is not denied, as I have already observed, that the property which stands in the name of the complainant was bought by Mr. Bray with the money of the West Jersey and Seashore Railroad Company.  If this company was empowered to take title to this property it would now be the equitable owner of the land.  For the purposes of this suit it is the owner of the land, for Bray is a mere figure, whose movements are directed by the West Jersey and Seashore Railroad Company.

The granting of this writ would concede to this company all the rights of an ownership which it has no power to acquire.  This court would lend itself to a scheme condemned by public policy and inequitable in every phase in which it can be regarded.

The facts in this case, in view of the questions here presented, are identical with those in the case of *Piedmont and Cumberland Railroad Co.* v. *Speelman, 67 Md. 260.* In that case a lease of lands had been assigned to a president of a railroad company, to be used by him for the purpose of throwing obstacles in the way of the completion of a rival railroad. On a bill filed by the assignee of the lease, the court refused to enjoin the new road from entering upon the land to lay its track, but left him to his remedy at law. The refusal of the court was put upon the ground that the president had no other motive or purpose in obtaining the assignment of the lease than that of defeating the construction of defendant's road and that a court of equity would give no aid to such a transaction.

The opinion of Chief-Justice Alvey contains a full and satisfactory discussion of the grounds for this judicial action.

But the question now mooted is settled in this court.

Upon a motion to dissolve the preliminary injunction in this suit Vice-Chancellor Pitney decreed such dissolution on the grounds—first, that the value of the land was so insignificant that a court of equity would not take cognizance of the suit, and second, that Mr. Bray had bought the land at the instance of the competing road ; that his object in asking for an injunction was merely to obstruct the construction of defendant's road for the benefit of the existing road.

Now, the facts appearing upon final hearing in these respects are substantially the same as those appearing upon the bill and affidavits upon which the decision of Vice-Chancellor Pitney was made. His decision is, therefore, in my judgment, a direct precedent, by which I am guided in the decision of this case upon final hearing, for it is impossible to distinguish between the posture of the parties in the application for a preliminary injunction and their present posture, so far as the construction then placed upon these two phases of the case is involved.

I will advise a decree dismissing the bill of Bray.

In respect to the bill of the *Ocean City Railroad Co.* v. *Bray* Vice-Chancellor Pitney refused a preliminary injunction upon

facts which were in no substantial respect variant from the facts appearing upon final hearing. The grounds upon which the injunction was then refused are, in my judgment, obstacles in the way of advising an injunction upon final hearing. In addition to the facts then appearing, it was stated upon the argument in this case, and not denied, although not strictly within the case, that the proceedings taken by the Ocean City Railroad Company for the condemnation of its right of way across this land have, since the hearing, been vacated upon *certiorari* by the supreme court.

The conclusion thus reached is also in accordance with the opinion in *Piedmont and Cumberland Railroad Co.* v. *Speelman, supra.*

A word in conclusion in regard to the insistence on the part of the West Jersey and Seashore Railroad Company that the route filed by the Ocean City Railroad Company is so indefinite as not to conform to the statutory requirements. Any indefiniteness which originally inhered in the route and map as filed has been cured by an amended route. But, even conceding that the filed map, delineating the route, was in other respects indefinite, it must be assumed that it was sufficiently definite for all the purposes of the case of *Bray* v. *Ocean City Railroad Co.* In that case the bill charges that the Ocean City Railroad Company filed a map of its route or location of its road, passing through the lands of complainant and crossing the Crookhorn thoroughfare, and that certain contractors were engaged in driving piles in the meadow opposite complainant's land and within the lines of said surveyed route for the purpose of making a roadbed and building thereon the said railroad ; that the said work of piling is being done within about three hundred feet of Crookhorn thoroughfare, and will shortly be completed, and that the said work is within the lines of the railroad as surveyed and intended to be laid out and built upon.

In this case it is perceived, therefore, that the definiteness of the filed route, so far as respects its location in the *locus in quo,* is not merely admitted but charged as part of the complainants' case.

In the other case, that of the *West Jersey and Seashore Railroad Co.* v. *Bray*, the alleged defect is set up in the answer of Bray, but inasmuch as the injunction is refused upon other grounds this point becomes of no importance.