Zimmerman, J.
In 1952, the council of the village of Quaker City enacted ordinance No. 302 to regulate truck traffic and truck weights in the village. Among other things, such ordinance provides that all truck traffic, regardless of weight, is to follow state routes only; that trucks of a net weight of over 10,000 pounds may use streets and alleys other than state routes for local delivery, only by obtaining the permission of the mayor or the marshal; and that there shall be a net weight load limit of 10,000 pounds per vehicle using the streets and alleys of the village. Penalties by way of fines are provided for violations of the ordinance.
Plaintiff is engaged in the business of trucking, as a licensed contract carrier, and has a contract to haul coal for a mining company from its pits to the tipple where the coal is unloaded.
In his petition, plaintiff alleges that in his trucking operations it is necessary to follow certain state and county routes through the defendant village, namely, state routes Nos. 265 and 513 and county route No. 7; that the loads he carries are within the limits permitted by Section 5577.04, Revised Code, but in excess of the limits prescribed by ordinance No. 302; that he has been warned by the defendants that he will be arrested if he hauls loads of coal over the streets of the village, weighing in excess of the limits provided by the ordinance; that there is no way of hauling coal between the pits and the tipple other than by traversing the streets of the village unless he proceeds over certain county and state routes, which would necessitate many miles of extra operation and would add greatly to the costs of transportation.
Plaintiff alleges further that the described acts of the defendants are causing him great and irreparable harm and are violative of the rights accorded him by statute. He therefore prays that ordinance No. 302 be declared null and void as being in conflict with statutory enactments, and that defendants be enjoined from interfering with plaintiff’s free use of the village streets.
At the hearing before the trial court, it was developed that *122 county route No. 7 runs from a northeasterly direction into and through a part of the village; that state route No. 513 traverses the village in a northerly and southerly direction; that state route No. 265 traverses the village in an easterly and westerly direction; and that plaintiff has at all times had the full and unrestricted use of the state routes which pass into and through the village.
It appears that plaintiff operates 16 motor trucks, 8 of which are 3-axle 10-wheel tandem-driven dump trucks, 8 feet wide and weighing 13,000 pounds unloaded and carrying loads of 24,000 pounds; and that 8 of them are single-axle dump trucks, 7% to 8 feet wide and weighing 9,000 pounds unloaded and carrying average loads of 17,000 pounds.
The evidence shows further that plaintiff’s prospective use of county route No. 7 in the village would be a convenience to him by way of shortening the distance of his hauls, but that its use is not a necessity; and that if plaintiff were to traverse such route, which passes through a residential district, there would be approximately 160 trips daily by loaded trucks and the same number of trips per day by unloaded trucks.
It appears further that county route No. 7, designated Main Street where it passes through the village, is 18 feet wide and is paved with concrete. At one place underneath it lies an eight-inch cast iron pipe which carries the principal water supply of the village from a 100,000-gallon reservoir located north of the village. Basil Foraker, mayor of the village of Quaker City, gave the following uncontradicted testimony :
“Q. Are you familiar with state routes 265 and 513 as they proceed through the village of Quaker City? A. I am.
‘ ‘ Q. Do you have knowledge as to how long trucks connected with the Virginia Mining Company have been making use of those routes. A. Ever since they started their mining operations up there. I believe that is a matter of record.
“Q. Approximately how long? A. Four or five years.
‘ ‘ Q. Are you familiar with the maintenance and repair that has been required on those state routes within the village during the time you have been officially connected with the village of Quaker City? A. I am.
“Q. What means of repair and maintenance have been necessary during that time ? A. Well, if it please the court, in *123 my own way I will attempt to relate some of the things that we have had to do. It seems as though these big trucks shove this street right down and part of the curb came up on the western end of Main Street, and it has disrupted our storm sewer — has shoved it clear out on the north side of the road, just about opposite the H. H. Floyd property. Then those heavy trucks have caused the retaining wall opposite the Friends Cemetery to collapse and fall in, and great sections of the road have been caused to be broken off and to settle and pushed out. We have had to fill those up and attempt to keep them in shape, and last fall at the expense of the village we tarred and sanded all those cracks we could, but it don’t seem to have been to much advantage, they just push open and water gets down into the place. With the partial aid of the state we had portions of it black topped, which these trucks have been breaking up, it is self-evident up there, and started holes in that.
“Q. Calling your attention to what would be known as West Main Street, state route 265 going out toward Salesville, do you know the width of the paved portion of that strip ? * * * A. As near as I could ascertain, it is approximately seventeen (17) feet.
4 4 Q. Do you have any knowledge of the trucks of the plaintiff using that particular road — have you ever seen his trucks on that road? A. I have.
“Q. Have you ever noticed two of his trucks passing each other, going in opposite directions on that road? A. I have.
“Q. What occurred at that time? A. Well, one of them had to pull up over the curb onto the property owner’s lawn, and to side pass practically all the way now, approximately 12 to 18 inches wide, they have had to get over there to get by each other.
‘ 4 Q. Has that affected, to your knowledge, any of the property along there? A. Yes, it has. There is one particular property there, I believe the name is Weber, where it is causing the wall to collapse in his basement.
4 4Q. Does it have an effect on the sidewalk? A. Yes, it has. They have broken up the sidewalk there, I believe it belongs to Garrett Hartley.
“Q. Does it have any effect on the greenlawn — the parking? A, Yes, it does,
*124 “Q. What effect does it have on the parking, if any? A. There couldn’t be any parking at all.
“Q. No. I am speaking of the grass strip. A. It is all cut up, wore out — it is just a roadway.
“Q. It is traveled upon, is it? A. Yes.”
Plaintiff concedes that under Section 3, Article XVIII of the Constitution of Ohio, the defendant village has authority to exercise all powers of local self-government and to adopt and enforce within its limits local police, sanitary and other similar regulations as are not in conflict with general laws. However, plaintiff contends that the defendant village has no right or authority to enact and enforce an ordinance governing the weight of motor vehicles which may use its streets when those streets are a part of the state highway system. Section 5535.01, Revised Code. He asserts that county route No. 7 in the defendant village is a part of the county highway system of Guernsey County, created by action of the Board of County Commissioners (Sections 5541.01, 5541.02, 5555.01 and 5557.02, Revised Code), and that, since such route is a part of the county highway system, the defendant village has no right to place limitations upon its use. He argues further that limitation of weights of vehicles using routes in the county highway system is solely a matter for the determination of the Board of County Commissioners under Section 5577.08, Revised Code, and, hence, ordinance No. 302 conflicts with general laws and is ineffective.
Plaintiff insists further that ordinance No. 302 is void because it is arbitrary and unreasonable and delegates discretionary powers to village officers, without prescribing standards to govern their actions, and that it contains more than one subject.
On the other hand, defendants rely on Sections 715.22 and 723.01, Revised Code, which confer upon municipal corporations the power to regulate the transportation of articles over their highways and streets and to regulate and control the use of the highways and streets within their confines, and which impose a duty on municipalities to keep public thoroughfares open, in repair and free from nuisance. In this connection they call attention to the case of Froelich v. City of Cleveland, 99 Ohio St., 376, 124 N. E., 212. See, also, 28 Ohio Jurisprudence, 601, Section 376.
*125 The authorities are agreed that injunction is an extraordinary remedy equitable in nature, and that its issuance may not be demanded as a matter of strict right. An application for an injunction is addressed to the sound discretion of the court (Burnet v. Corporation of Cincinnati, 3 Ohio, 73, 88, 17 Am. Dec., 582, 584), and its allowance is a matter of grace. Whether it will be granted depends largely on the character of the case, the peculiar facts involved and other pertinent factors, among which are those relating to public policy and convenience. If its allowance would be inequitable or unjust, it may be refused. And unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments. 21 Ohio Jurisprudence, 1006, Section 17; 43 Corpus Juris Secundum, 420, Injunction, Section 14; 28 American Jurisprudence, 230, Section 35.
In the ease of Christenson v. Nielsen, 88 Utah, 336, 343, 54 P. (2d), 430, 432, 433, the court said that the chancellor has a legal discretion to refuse an application for an injunction in a doubtful case or where there are circumstances which make its refusal neither arbitrary nor capricious, notwithstanding there is an infringement of a right.
The following cogent language appears in the case of Ocean City Rd. Co. v. Bray, 57 N. J. Eq., 164, 167, 37 A., 604, 605:
“But an injunction is an extraordinary proceeding, the propriety of the allowance of which depends upon a variety of circumstances aside from the strictly defined right of the complainant. * * *•
i i # *
“The allowance of an injunction is a matter of discretion, and an injunction will not be granted if it will cause great injury to the defendants, without corresponding advantage to the complainant. * * *
“So it is perceived that whether writs of this class will be allowed depends not upon the strict right of the parties to some redress, nor upon the question whether the defendants have violated some legal right, but it depends upon whether, under the circumstances, this extraordinary process should go in the particular instance.”
*126 In the instant case, the parties presented conflicting claims as to the controlling law, which no doubt made the propriety of the allowance of an injunction at least doubtful in the court’s mind. Moreover, the equities are on the side of the defendant village which has suffered material damage from plaintiff’s heavy trucks.
There is nothing in the record to indicate that the defendants will interfere with plaintiff’s trucks in their use of the state routes passing through the village, and so far plaintiff has made no attempt to use county route No. 7 in the village. If he does so at some future time and should be arrested and prosecuted, he can raise the legality of the village ordinance in the criminal proceeding.
The trial court refused the injunction, the Court of Appeals approved that action, and this court finds no sufficient or compelling reason to interfere with the judgments below.
Therefore, the judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Wbygandt, C. J., Matthias, Stewart, Bell and Taet, JJ., concur.