CHRISTENSON v. NIELSEN et al.

No. 5682. Decided February 6, 1936. (54 P. [2d] 430.)

338

*Christenson, Straw & Christenson,* of Provo, for appellant.
*Robinson & Robinson,* of Provo, for respondents.

WOLFE, Justice.

Appeal from a judgment refusing to grant a permanent injunction against the defendants restraining them from constructing and using for irrigation purposes a certain ditch in the public highway along abutting property owned by plaintiff. Owing to the fact that the issues have become unnecessarily confused by the state of the pleadings and, further, because of seventy-six assignments of error, many of which must be considered on this appeal, we are compelled to give a more detailed statement of the facts, the pleadings, and the proceedings thereon than would ordinarily be re-

quired. Some of the main facts regarding which there is no dispute will be set out before a statement respecting the pleadings is made.

Plaintiff is the owner of certain real estate located in the town of Orem, Utah. It is farm land and abuts for more than 300 feet on the west boundary of State street, alleged to be the main street in the town. Nothing appears in the pleadings or the evidence as to whether this street is a state highway, or a county road, or just a town street. This omitted fact plays an important role, as shall be noted later in this opinion. The defendants August and Carrie Nielsen own farm lands abutting on the west side of said State street to the north of the Christenson property. Both plaintiff and defendants live on and earn their living from these respective pieces of land. A lateral runs through the Christenson property north of their dwelling house and thence across State street through a culvert. Another lateral known in this case as the Steele lateral runs for a portion of its course approximately parallel to this Christenson lateral about 680 feet north of the latter. Another lateral, called the Church lateral, runs east and west some distance north of the above two mentioned laterals. It comes only collaterally into this case by way of a claim on the part of the plaintiff that it furnishes one other means whereby defendants may obtain water without constructing the ditch in front of plaintiff's property, and that therefore the construction of the controverted ditch is not imperative to the use and enjoyment by defendants of their land as contended by them.

Between March 28 and April 11, 1933, the defendants August and Carrie Nielsen (Albert Nielsen seems not to be interested in the suit and will not be intended to be included in the term "defendants" as used hereafter) constructed, or caused to be constructed, but did not finish, a certain ditch along the west side of said State street in the town of Orem, approximately parallel to the abutting lands of plaintiff for a distance of about 300 feet starting from the Christenson lateral as it crossed said highway, running thence approxi-

mately north for the purpose of connecting with the Steele lateral approximately 680 feet from its starting point. While this was in the process of construction, plaintiff filed an application to enjoin defendants on the grounds: First, that the said ditch was being constructed without the authority and consent of the town of Orem and therefore in violation of sections 151 and 184 of chapter 16 of the Revised Ordinances of the town of Orem; and, secondly, on the ground that it was a nuisance in that it interfered with the use and enjoyment of plaintiff's property and would do so especially in the future in preventing ingress and egress and thus greatly diminish its value for residence lots or store property, which type of property, being located on the main street, it was alleged it now was, although presently used for farming purposes. The prayer asked that it be abated as a nuisance; that defendants be enjoined from further making, digging, or constructing said ditch or from flowing water therein or attempting to do so. Five hundred dollars for damages "accrued to date" was asked, although it seemed to be asserted and admitted in the evidence that it would cost about $15 to restore the land to its erstwhile condition as it existed before the ditch was started. It is important to note that there was no prayer for damages due to an alleged depreciation of the value of plaintiff's property by reason of such ditch being permitted permanently to remain where it was constructed and because of its use, although a prayer for general relief was added.

It would thus appear, at the outset, that no issue as to the amount plaintiff should recover as damages to her property, if the ditch were to remain and be used by defendants, was presented. It was essentially an action to abate and enjoin. Evidence on the question of whether or not such ditch would depreciate the value of plaintiff's property was introduced for the purpose of showing a damage if the ditch was a permanent affair, but only on the issue of whether it would constitute an irreparable injury and should for that reason be abated. It was not an action to recover damages for the

construction and use of a ditch, the prayer for damages being limited to those alleged to have been suffered by plaintiff up to the time of filing the application.

To the complaint the defendants answered, denying that the 300 feet of plaintiff's land abutting the highway along which ran the controverted ditch was suitable for business or residential purposes or that the said property had no prior existing impediments to ingress and egress, and that the street adjacent to said property had hitherto been free from accumulations of waste, flood, or surface waters, and denying that the ditch as it was to be constructed would accumulate and impound water over the public street in front of and over plaintiff's land or that as constructed and intended to be constructed it would fail to hold all the water desired or required to be conveyed by defendants, and would therefore spill water, which in turn would require enlargement of the ditch and the building of higher dikes or levees; denying further that the enjoyment or use of plaintiff's property would be impaired and denying the existence of the ordinances of the town of Orem set out in the complaint or that defendants did not have authority from the board of trustees to construct the ditch or that said ditch did or would cut off access to plaintiff's property, and most generally all the other allegations except ownership in the plaintiffs of the abutting land and the allegation that the ditch was being constructed. The answer went on to allege as a "further answer" that up to 1927 defendants had for more than twenty years irrigated their lands by means of a ditch which ran through the Christenson as well as other lands, and that said ditch had not been abandoned; that in 1929 plaintiff plowed up that part of said old ditch which ran east of her land and leveled it down, depriving defendants of its use, and that during the irrigation seasons of 1929 to 1933, both inclusive, defendants had been compelled to convey water through the Steele lateral, but that they had no legal right so to do; that on August 8, 1932, they had obtained permission from the county commission to build the

ditch in question and that they proceeded to construct the said ditch strictly in accord with such authority; that the lands over which said ditch was constructed had a natural slope from south to north, and that they would not convey sufficient water through said ditch to overflow its banks so that water would run on plaintiff's land or do any damage to plaintiff; that defendants had no other means of getting water on their lands; and that such ditch was necessary, imperative and indispensable to the use and enjoyment of their said lands. This so-called "further answer" is set out in some detail because, while it was, on motion, by the court stricken, plaintiff vigorously complains that the court admitted evidence offered by the defendants which touched on those very allegations but would not permit plaintiff to introduce evidence in regard to them or even rebut evidence which defendants had introduced touching on these stricken allegations. Many of plaintiff's assignments of error go to such claimed erroneous rulings. Oddly enough, no assignment was directed to the ruling which struck the "further answer."

At the conclusion of the trial the court found the issues in favor of the defendants and against the plaintiff and refused to enjoin or abate the ditch. Many of these findings are attacked as (1) being unsupported by the evidence; (2) not within the issues; and (3) contrary to the clear weight of the evidence. Further complaint is made that the findings do not cover all the material issues presented and necessary for a complete adjudication of the case or sufficient to tell exactly how comprehensive is the adjudication. We shall be compelled to set out in some detail these findings in order intelligently to give an accurate portrayal of the law involved in the assignments so attacking the findings, but preparatory thereto we shall again call to mind certain recognized principles of law which will serve to assist in the analysis and which are to some extent controlling. In the first place, this being an equity case, we are compelled to review the record and pass on the weight

and sufficiency of the evidence. Secondly, this being an application for an injunction, the chancellor has a legal discretion to refuse it in a case where it is doubtful or where there are circumstances which make the refusal of it not arbitrary or capricious, *even though there is an infringement of a right,* thus leaving the plaintiff to her action at law for redress of damages. While it will appear from the findings that the court evidently refused the injunction on the basic ground that plaintiff had suffered no damage and that no substantial right had been interfered with, rather than on the ground that, notwithstanding any such interference, he would not under the circumstances grant an injunction, yet in considering whether there was error in admitting evidence, it must always be kept in mind that the chancellor may admit evidence which may serve not only to determine whether a right has been infringed but whether the circumstances are such as would, even if there is such infringement, persuade him to withhold the injunction. The evidence of course must be as to circumstances surrounding the issues and not as to some matter wholly foreign to the issues.

Assignments of error from 37 to 49, both inclusive, attack the findings as not being supported by the evidence or as not within the issues. Finding No. 7 concludes, in epitome, that defendants up to 1928 irrigated their lands by means of a ditch which was located immediately adjacent to the east boundary of the lands described as plaintiff's for more than twenty years before plaintiff owned her land; that during the year 1931 plaintiff plowed up and destroyed that portion of the said ditch which was constructed along the east boundary of her lands; that during the years 1929 to 1933 defendants had not the use and benefit of said ditch, but were compelled to convey water from another ditch to which they had no legal right, but have obtained water only by the consent of the parties through whose land said ditch passes; and that the owners of such ditch "have refused and do now refuse to grant" defendants a right of way through said ditch. This matter contained

in finding No. 7 appears to be on matters alleged in the "further answer" which was stricken. Moreover, the plaintiff objected to the witness A. H. Christenson being asked on cross-examination, when he had not touched on the subject in his direct examination, whether in 1927 he told defendants that if they would discontinue taking their water through the ditch crossing plaintiff's land he would guarantee to get them a right of way through another ditch. The witness Christenson was asked several questions on cross-examination concerning the existence of this old ditch. It was not proper cross-examination, but if it was material the error in permitting it would not necessarily be prejudicial because the defendants could have elicited it by calling the witness as their own. But in this case such matters were stricken from the answer and yet the defendants were allowed to bring them out on cross-examination when they, in no sense, tended to alter, modify, explain, contradict, or affect matters brought out on direct. A motion to strike this testimony was denied. These rulings are attacked by the first, second, and third assignments of error. These matters of whether defendants had a right in the old ditch which plaintiff plowed under in 1931, and of whether it had not been abandoned, and whether defendants had agreed to take their water only through the Steele ditch in case they were guaranteed that all the owners of the ditch gave them the right to use it, were injected into the case at a number of places, and yet the plaintiff was not permitted to show her theory of that transaction. Even Exhibit C, which purported to be a grant from Brigham and Katie Steele to the defendants of a right to convey water through their ditch in consideration of a relinquishment by the defendants of their right in the old ditch through which, up to 1928, they had for twenty years taken their water, was admitted in evidence, but the plaintiff was not permitted to show on what conditions it was signed. These issues, as far as the defendants establishing *a right* in said old ditch was concerned, were not in issue. That defense had been stricken

from the answer. Had the defendants taken the position that they did not abandon their old ditch and that the agreement with the Steeles was not enforceable because the condition on which they signed it had not been lived up to, they should have recreated the old ditch and if the plaintiff sought an injunction against that, have defended on the ground that it still belonged to them because the relinquishment had been on a condition which was not fulfilled. But in this case they seek first to bring the matter in by answer to a complaint against constructing another ditch claimed to be detrimental to the plaintiff and after it is stricken still to inject it in the case; yet plaintiff is not permitted to meet such wrongly injected issue. But while these issues have nothing to do with the right of defendants to construct the ditch under controversy, they might be collaterally examined into by the court in order to determine whether it would apply the remedy of injunction. If it had found that the defendants were fooled or overreached in surrendering their rights in the old ditch for a very doubtful or no right in a new ditch, it may have been persuasive on the court to withhold injunctive relief even though the plaintiff's right was interfered with. The court might, under those circumstances, well have left the plaintiff to her action at law for damages. The difficulty with this view is that the court included in its finding No. 7—and here we return again to a consideration of that finding from which we had for the instant necessarily departed—those facts about the defendants not having abandoned the old ditch, and that the plaintiff had, from the implications of the finding, wrongfully destroyed the ditch. These findings appear to be the basis not of a mere refusal to use its injunctive powers, but of a right in the defendants to construct the new ditch; for the findings as a whole deny injury to the plaintiff, thus negativing the idea that the court put these facts in its findings to show only reasons why it refused the remedy. Had the court found that the plaintiff's right was violated but held that under the circumstances it would not apply injunctive

relief, the matters contained in finding No. 7 might have been material and justified; but when it denies that any right in the plaintiff has been interfered with, such matters are not only immaterial to the findings, but reveal a wrong basis for the result reached and by not permitting the plaintiff to fully answer them during the trial by developing her theory of the transaction regarding the old ditch, were actually prejudicial and worked an injustice. It may be just as well at this time as any to say that no error occurred in admitting these facts because, as before stated, when the evidence was offered no one knew but that the court was receiving it, not as material to a determination of whether the plaintiff was suffering from an interference with her rights, but in order to aid in his determination as to whether he would, if her rights were interfered with, nevertheless withhold the injunctive remedy. It was only after the findings were signed that it could be determined that he had admitted it for the former purpose. But the question of whether evidence was erroneously rejected or admitted must be determined as of the time it was offered, and not in view of the court's subsequent actions. At the time the defendants offered evidence of the transactions regarding the substitution of the Steele lateral as their water carrier in place of the old ditch, such evidence was material as an aid to the chancellor to determine whether he should at all events use his injunctive processes. But just as timely was evidence to rebut the evidence introduced by defendants and its inferences and implications, admissible when offered by the plaintiff. The situation was at the time of the introduction of the evidence as follows: Defendants say to the chancellor, in effect:

"Even though we are technically interfering with a right of plaintiff to have untrammeled enjoyment of her property, we think there are circumstances which show that you should not enjoin us. Such circumstances are that we were induced by certan unkept promises to give up an old ditch substantially running where we are constructing the ditch under controversy. We therefore desire to show the

agreement with the Steeles and certain conversations which A. H. Christenson (husband of the plaintiff) and Pearson had with us at the time we signed such agreement with the Steeles which will show that we were induced to sign that agreement because of a promise that we would get the same right to run our water through that Steele lateral from Bigelow and Rasmussen who are the only other owners of the Steele lateral. We never got such right; therefore we have no legally assured way of getting our water through the Steele lateral and we have, in effect perhaps, lost our old ditch. We never received any consideration for signing the Steele agreement but evidently the Steeles did."

To this line of evidence the plaintiff objects on the ground that it is not within the issues, and especially when partly brought out on cross-examination of his own witness who testified to nothing on his direct relating to it. The court admitted it, and at such time it was material as an aid to the court in the determination as to how it shall use its discretion. The plaintiff then says in effect:

"If you admit such evidence for any purpose we should be permitted to rebut it and its implications by giving evidence of circumstances which would show that the reasons why defendants contend you should not, in any event, use your injunctive powers, are not tenable and to show why it would not work an inequity to grant the injunction. You should let me put in evidence to show that those conversations supposed to have taken place at the time the Steele contract was signed, and which would tend to show that the agreement was a conditional one, never did take place. You should also permit me to show that the real motive of the defendants in this case is to procure some of the money which the Steeles obtained for permitting their ditch to be used. You should further permit me to show that Rasmussen and Bigelow, the only two owners of the Steele lateral in addition to the Steeles were willing that the defendants continue to use said lateral, or at least that they made no objections. All these matters I think will rebut any thing which might otherwise influence the court to withhold the injunctive relief, even though my common law right is interfered with."

The court appears, first, to have permitted the defendants to introduce testimony on their theory. Second, to have refused to admit testimony which would tend to rebut the

effect of their testimony. Third, expressed the definite conclusion during the trial that all of such matters were immaterial. And, fourth, ended up by including them as sustantial parts of his findings. The above informal recitation of the type of evidence offered and admitted over objection in favor of the defendants, and of the evidence offered by the plaintiff but refused, gives us the clew with which to solve many of the assignments of error without setting out the offered evidence. The court was correct at the time of ruling in overruling plaintiff's objections to the introduction of the evidence as specified in assignments 1, 2, 3, 4, and 5 (outside of the objections that it was not proper cross-examination, which were well taken), 15, 16, 17, 23, and 30. Therefore, those assignments, which pertain to evidence on the transaction involving the old ditch as above outlined, were not well taken.

The court's rulings in sustaining defendants' objections to offers of evidence as exemplified in assignments 24, 25, 26, 27, 29, 31, 32, 33, 34, 35, and 36, which pertain to similar offered but refused testimony, were erroneous; therefore, those assignments must be upheld. The thirty-seventh assignment dealing with matter in finding No. 7 is also well taken.

Assignment 38 ascribes error in making a finding, No. VIII, that the defendants received authorization from the board of county commissioners to construct the ditch under controversy in the highway and that it was constructed in accordance with such authorization. The finding is supported by evidence of such authorization, but this █ finding reveals one of the unexplored phases of this case. The plaintiff alleged that the ditch was being constructed without authority or consent of the town trustees and therefore in violation of the town ordinances which were introduced in evidence. It was also shown by plaintiff that no consent of the board of trustees was obtained. Defendants never rebutted or countered that evidence, but showed authority from the county commissioners. And finding No.

9 expressly finds that defendants did not obtain from the board of trustees of the town of Orem any permit to construct the ditch on any part thereof. But nowhere in the briefs or in the assignments is this question of authority discussed. Did the town trustees or county commissioners or state road commission have jurisdiction over this part of the highway? Nowhere in evidence does it appear whether "State street" is a state highway, county road, or town street. We must take judicial notice that Orem is a town, but not the nature of "State street" in Orem. We cannot take judicial notice that it is one of the highways mentioned in section 36-6-1, R. S. Utah 1933, because we cannot take judicial notice that the main street of Orem is that highway. If it is a state highway, section 36-3-1, R. S. Utah 1933, definitely states how it should be systemized according to its width. Perhaps it was so obvious to counsel for the defendants and the court that the county commissioners had the sole jurisdiction over this State street that no argument or law was needed, and so obvious to counsel for plaintiff that the town trustees had sole authority to grant the right to construct a ditch that he needed no enlightenment. But we do need enlightenment and have received none. And it appears to be quite important. It would seem that if the town has the only authority to grant the right to construct the ditch, a citizen might have applied for an injunction if the town trustees did not, and a portion of the citizens of the town who claim to be directly injured could prevent such a breach of the law and violation of the ordinance perhaps without showing more. On the other hand, if the county commissioners have the authority to grant the right, the defendants have complied in that respect. Objection to the introduction of the purported authority of the county commissioners (Exhibit I) was interposed by plaintiff, and by her nineteenth assignment of error plaintiff brings the question of its materiality before this court for review, but not in any of the briefs is the question of whether the county commissioners or who had the authority discussed. No-

where are we enlightened on the effect of sections 19-5-38 and 15-12-13, R. S. Utah 1933, and other sections dealing with the powers and duties of town trustees and county commissioners over roads, not to speak of the state road commission. Assignment 38 specifies that finding No. 8 is incorrect because the question of the county commissioners was not within the issues. On close reading of the pleadings this does not seem to be correct. Plaintiff alleged in paragraph 8 of her complaint that defendants did not have the permission of the Board of trustees of the town of Orem. Defendants in paragraph 7 of their answer simply denied each and every allegation contained in paragraph 8 of plaintiff's complaint. This put in issue the matter of the consent of the town trustees. In fact, after the "further answer" was stricken only denials and admissions of plaintiff's allegations remained. But paragraph 8 of plaintiff's complaint also alleged that "the construction and maintenance of said ditch and canal by defendants as aforesaid, was without any right in the defendants" and that it was "illegal and without *any* right on the part of the defendants or either (sic) of them so to do." The defendants may not have had a right to construct the ditch even with the consent of the proper authorities if it substantially interfered with plaintiff's rights or was a nuisance, but without authority from some public body authorized to give consent they certainly would have no right. We must assume that the allegations above set out and their denial did put in issue, not only the legal question of whether the defendants had a right as respects plaintiff, because their action did not interfere with her common-law rights to enjoy her property without substantial interference, but put in issue the question of proper authorization. Consequently, finding No. 8 is within the issues. But whether such authority by the county commissioners is the proper authority, we do not intend to go into, having had no aid from counsel in such regard. It is unnecessary to determine whether the burden was on the plaintiff to show lack of authority or on defendant to show au-

thority, because in this case it is admitted that the only purported authority came from the county commissioners, and the question is not who had the burden but is this authority to construct. The bare paper from the county commissioners was introduced by defendants but its effectiveness in law was never shown. Since the case must be returned to the trial court for retrial, opportunity will be given to straighten out such matters in the pleadings and on the trial. It is quite unsatisfactory to the court of review to be required to leave the matter in a suspended state. Finding No. 8 will, under the circumstances, be permitted to stand without prejudice to further review of the questions involved therein.

It is quite apparent from what has already been said that the plaintiff has not had a fair trial and that the record is not in such shape as to permit us to make findings. It will have to be returned for retrial. In order to be of aid to the court and counsel in such retrial, we shall continue to consider the remaining assignments. Much was said through the testimony about the capacity of the ditch to take the defendants' water, being from two to six second feet. There was testimony by a Mr. Tanner, former state engineer, that owing to a low place in the ditch the present sized ditch would not carry the water without a "supported gradient" and superimposed banks and without being considerably widened. He testified from measurements and stated that six second feet would result in overflowing the present ditch and plaintiff's land. No other scientific witness was called. Defendants put on the stand several witnesses who for many years had done practical irrigating who testified that the ditch as presently constructed would take six second feet of water without overflowing. One or two other witnesses testified that the old ditch approximately the same size carried such amount of water, but A. H. Christenson testified that it overflowed practically every time. This really raised a question of what might happen in the future. The court in its finding No. 11 found that "defen-

dants have not and *will* not in any way or manner damage plaintiff's property." In finding No. 12 found that "the construction and *use* of the ditch will in no way or manner either directly or *indirectly* interfere with plaintiff's use and enjoyment of the lands described in her complaint; that the banks of said ditch as constructed and proposed to be maintained by the defendants are not and will not be above the established grade of the paved and travelled portion of the highway and of the sidewalk between plaintiff's property and the ditch." In finding No. 13 the court found that the land has a natural slope from the south to the north and that defendants "have not and *will* not convey a sufficient amount or quantity of water through said ditch so that said water will overflow the banks of said ditch and run on plaintiff's lands, or in any other way or manner do any damage to the plaintiff." In finding No. 15 the court found that the size of the ditch "constructed by defendants and proposed to be used by them is approximately 300 feet in length, three feet in width and one and one-half feet in depth and can readily be crossed by a bridge or culvert and that said ditch will carry the amount of water defendants proposed to flow and carry through said ditch for the irrigation of their lands without the same overflowing the lands of the plaintiff or in any other way or manner interfering with plaintiff's use and enjoyment of her said lands." It should be noted that these findings, which should be read together, refer not to the alleged interference to ingress and egress which plaintiff alleges will result from the mere presence of the ditch, but to an indirect damage due to the claimed future over-flooding because of an alleged inadequacy of the ditch or a damage because a required enlargement of the ditch in order to remedy the claimed defect of inadequacy, which it is alleged experience will reveal, will further aggravate the alleged nuisance. This was set out in paragraph 5 of plaintiff's complaint as a future hazard. The findings are partly prophetic. They proceed on the supposition that defendants *will not convey* any more water than the ditch will hold or

will not indirectly in any way in the future damage plaintiff's property. No one knows about that. The findings should confine themselves to presently known facts. On the question of the adequacy of the present ditch to carry from two to six second feet of water without enlargement, there was a conflict of evidence. We do not believe that the clear weight of the evidence in this regard is wholly in favor of plaintiff's witness Tanner, even though it appears to be scientific as compared to the rather guessy testimony of some of defendants' witnesses who were practical irrigators. But we would not on that ground say that the court had found against the clear weight of the evidence. We think, however, that the findings, conclusions, and judgment were not sufficiently protected against future contingencies. Although the court did conclude that a ditch three and one-half feet wide and one and one-half feet deep on the particular grade it was constructed on would carry six second feet, such finding, being res judicata against the plaintiff, should be guarded by reservations in the conclusions or judgment against error which might be revealed by experience. That could be done by an injunction against defendants prohibiting them from enlarging the ditch without proper authority and saving the rights of plaintiff to be heard on the question of whether such enlargement, if necessary, would interfere with her rights (having found that the present sized ditch did not), and in addition enjoining defendants from taking any more water through the present sized ditch than it would hold without overflooding. These restrictions would save the plaintiff from having her property flooded if the ditch were found inadequate after experience and would also save her right to come into court and object to an enlargement. Because the court finds that a three-foot wide ditch does not interfere or is not a nuisance is no warrant for supposing that a twelve or sixteen foot wide ditch, as testified to by Tanner that defendants' water would require, might not be a nuisance or interfere. Moreover, the plaintiff's right to have culverts or bridges con-

structed in the future by defendants if it should transpire that their present farm land can be sold for residential or business property should be taken care of by the decree. The plaintiff may not now suffer from interference in the coming or going from her property because her messuage is south of the beginning of the ditch and her roadway therefore not interfered with. But in the future the property may not be desirable for residences if a ditch impedes the use or the convenience of parking in front. Certainly the defendants should be required at the proper time to construct adequate bridges or culverts to take care of such contingencies. The decree should not permit the right which it confirms to ripen into a right to be free from remedying any future impairments which a change in the nature of the property may bring about. From what has been said it is clear that there are certain elements lacking in the findings, conclusions, and decree. The findings also incorporate certain prophecies which should be eliminated. But as to the support in the evidence for the finding in reference to the adequacy of the ditch to carry defendants' water, we find it present. Therefore, it follows that assignment No. 47 in that respect directed to finding No. 15 is not well taken. The findings in finding No. 12 that the banks of the ditch as constructed are not above the established grade of the paved highway or sidewalk or ditch are not supported by the evidence. Nor is the finding in finding No. 13 that the slope is from south to north strictly correct; for a part of the distance, according to the uncontradicted evidence, it is from south to north and then it begins to rise again as it goes further north. For these reasons, assignments 40, 42, 43, and 44 which attack findings Nos. 11, 12, and 13 must be considered as well taken.

Finding No. 10, part of No. 11, and No. 12 go to the conclusion that the ditch as presently constructed, if it carries defendants' water without flooding, will not and does not substantially interfere with any right of the plaintiff. Finding No. 17 is to the effect that the "construction

and use of said ditch *will not* and does not constitute either a public or private nuisance." Construing the latter to mean will not, as presently constructed and if used without overflowing, constitute a public or private nuisance, we believe the conclusions therein arrived at are not such as to be beyond the permissible margin wherein reasonable minds may differ. Had the conclusions been the other way, we could not any the more have disturbed it. A 3½-foot ditch running past farm land on the highway in a Utah country town when that land is part of a larger tract with ample facilities for ingress and egress may not be said to be a private nuisance as a matter of law. If the rights of the plaintiff in the future are properly guarded, we would not feel warranted in saying that the court concluded unreasonably in view of the evidence that such ditch did not substantially impede the plaintiff in the use and enjoyment of her property. In consequence, such parts of findings Nos. 10, 11, and 12 would have to be upheld. Assignments Nos. 39, 41, and 48, which attack such findings are, therefore, not well taken. In passing, it should be noted that the finding in finding No. 17 that the ditch does not constitute a "public" nuisance seems to be outside the issues. The judgment cannot preclude the question of whether the ditch is a public nuisance from being raised and plaintiff in this case proceeded on the theory that it was a nuisance *as to her*.

Complaint is also made as to some of the evidence admitted by the court to show that the ditch would not depreciate the value of the plaintiff's property. One Cordner was permitted to narrate on the advantages of a ditch to the property in better permitting a line of trees to grow. That was not the issue. The issue was as to whether the ditch would decrease the market value of plaintiff's property. It did not appear that Cordner was qualified to answer that question. He might honestly have thought a row of trees irrigated by water in a ditch would beautify and enhance the desirability of the place to such an extent as to offset the disadvantages of a ditch in front. It would

to him. But if the ditch took something from the market value it was nevertheless a detriment. Assignments Nos. 8 and 9 were, therefore, well taken. The testimony of the witness Loveless is subject to the same objection. He was asked whether such a ditch in his opinion would "damage the property." It was not clear whether the question called for an answer as to whether in his opinion it would decrease the market value or whether it called for an opinion on its general physical effect on the plaintiff's property by flooding or otherwise. Assignment No. 10 was, therefore, well taken. During cross-examination, the same witness testified that the ditch would have no effect on the value of the property which lends support to findings Nos. 10, 11, and 12. The plaintiff objected to the evidence of J. Elmer Jacobsen as to whether the ditch would decrease the value of the property. The objections were not well taken. The witness appeared to have the qualifications and the questions were in substantially proper form. Assignments Nos. 12, 13, and 14 were, therefore, not well taken. Loveless was asked about the capacity of the old ditch used by the defendants to carry their water, to which questions objections were made. If the ditch was substantially of the same capacity as the controverted ditch and ran over substantially like ground, the questions were permissible as presenting a practical demonstration. Assignment No. 11 was, therefore, not well taken.

The remaining assignments relate to comparatively trivial matters or to the court's failure to make findings which would support plaintiff's theory of the case, or to matters which are already contained in the findings by necessary implication, or to matters contained in the conclusions of law and judgment, and failure to grant a new trial. All of the points on which decision as to practically all of these assignments rest have been heretofore considered so that nothing would be gained by further specific treatment. What we have said in this opinion will effectively control and dispose of each of such assignments. Findings might have been

more specific on the matter of the amount of water which defendants had a right to use on their land and which the ditch would hold (assignment No. 52) and that the ditch as constructed would carry such amount of water, rather than to leave it to implications and to a finding that defendants would not transport any more water than the ditch would hold or that they would not overflow the ditch. Complaint that the court did not find that the defendants would enlarge the ditch unless restrained, and that plaintiff would suffer damage if they did, called for prophecies. We have already intimated how such matters should be taken care of.

In closing, we remark that in this case there are shown, through the evidence, indications that the defendants felt aggrieved in the transaction by which they gave up their certain rights in their old ditch for a doubtful one in the Steele ditch for no commensurate gain and without getting what had been promised them and for no money, while another had received money. This may have influenced the lower court. But if the agreement signed with the Steeles was signed on a condition not kept, that should be litigated in an action to recover their old ditch if the status had not changed or if the statute of limitations has not run. If the defendants obtain the proper authority and they do not substantially interfere with the present or future enjoyment of plaintiff's property, they should not be enjoined. If they do so interfere, they should be enjoined even though the proper public authority may give them permission to construct the ditch unless the circumstances are persuasive on the chancellor not to use his injunctive powers in spite of an interference with plaintiff's right. But the defendants should not prevail because of a desire to place them indirectly where they should be if they had directly pursued or should have pursued other remedies.

The judgment is set aside, and the cause remanded for a new trial; plaintiff to recover her costs.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.

MOFFAT, Justice.

I concur in the result.