## ZOLLINGER v. FRANK.

No. 6966. Decided December 30, 1946. (175 P. 2d 714.)

Rehearing denied March 28, 1947.

*H. A. Sjostrom,* of Logan, for appellant.

*Young & Bullen,* of Logan, for respondent.

WOLFE, Justice.

This is a right-of-way dispute. Zollinger owns two pieces of farm land, one of three acres and one of eleven acres, east of and adjoining a piece of farm land owned by Mrs. Frank.

A public road runs along the west side of the Frank land. Zollinger claims a right of way by prescription across the north end of the Frank property for the purpose of traveling with all types of vehicles, machinery and on foot from the public road to his fourteen acres.

Zollinger filed this action against Mrs. Frank to restrain her from interfering with his alleged right of way over her land and for damages for blocking that right of way and removing the surface therefrom. Mrs. Frank denied Zollinger had such a right of way and counterclaimed to quiet title to the property against Zollinger.

The lower court sitting without a jury determined that Zollinger has the claimed right of way and restrained Mrs. Frank from interfering with his use thereof and awarded him $25 damages. Mrs. Frank appeals.

The first question presented is: Was the use by Zollinger and his predecessors in interest during the presciptive period of the strip of land involved *adverse* to Mrs. Frank and her predecessors in interest?

Both parties agree that the use of the strip of land must have been "adverse" to Mrs. Frank and her predecessors in interest during the prescriptive period in order to give rise to the claimed easement. The disagreement arises over whether or not the facts of this case show adverse use for the prescriptive period.

The record clearly shows that Zollinger and his predecessors in interest have used the strip of land in question as a road to their land since 1903. Even one of Mrs. Frank's witnesses, Elias Peter Hansen, testified that he saw Zollinger use the road so often that he "thought he [Zollinger] had bought a right of way there." Also the record clearly supports the finding of the trial court that Zollinger and his predecessors in interest used the road at such times as they desired for a period of over forty years.

The courts are not in accord as to the exact meaning of "adverse use" when applied to prescriptive easements. Thompson on Real Property, Sec. 377, Vol. I, page 487. Some of the courts use the phrases "use

under claim of right" or "hostile use." Holdsworth in his History of the English Law, Vol. VII, p. 352, says:

"It would, I think, be true to say that there is no branch of English law which is in a more unsatisfactory state. There are, indeed, other branches of English law which stand in need of an intelligent restatement; but no mere restatement can clear up the muddle which the courts and the Legislature have combined to make of the law of prescription."

Holdworth's comments on the law of prescription in England are probably equally applicable to the condition in this country which exists as a result of the courts' unfortunate choice of words in characterizing the use necessary to initiate a prescriptive right. Some courts say it must be "peaceable," others say "hostile." How can the use be both "peaceable" and "hostile"? Some say it must be both "adverse to" and "acquiesced in by" the servient owner. "Acquiescence" by the servient owner seems inconsistent with "adverse" use; it hints more of "permissive" use for certainly the servient owner "acquiesces" in a permissive use.

Regardless of the words used to characterize this element of the nature of the use necessary to give rise to a prescriptive easement, it is our opinion that the courts mean that the use must be *against* the owner as distinguished from *under* the owner.

Also divergent are the views of the courts on the burden of proof and presumptions in prescriptive easement cases. As said in Section 72, Easements, 17 Am. Jur. 981:

"The prevailing rule is that where a claimant has shown an open, visible, continuous, and unmolested use of land for the period of time sufficient to acquire an easement by adverse user, the use will be presumed to be under a claim of right. The owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive. * * * In a few jurisdictions it is held that the claimant carries the burden of proving that the use was, as of right, hostile and adverse. If he leaves it doubtful whether the enjoyment was adverse, the presumption is not conclusive in his favor."

See also Thompson on Real Property, Sec. 394, Vol. I, page 509.

We think the better rule is that described as the prevailing rule in the above quotation. That is, where a claimant has shown an open and continuous use of the land for the prescriptive period (20 years in Utah) the use will be presumed to have been against the owner and the owner of the servient estate to prevent the prescriptive easement from arising has the burden of showing that the use was *under* him instead of *against* him. This rule was mentioned in the recent case of *Big Cottonwood Tanner Ditch Co.* v. *Moyle,* 109 Utah 197, 159 P. 2d 596, (on rehearing) 109 Utah 213, 174 P. 2d 148, 155, where it was said:

> "It is true that to establish an easement the use must be notorious and continuous—and on this adverseness—that is, holding against the owner—will be presumed." See also *Northwest Cities Gas Co.* v. *Western Fuel Co.*, 13 Wash. 2d 75, 123 P. 2d 771; *Eagle Rock Corporation* v. *Idamont Hotel Co.*, 59 Idaho 413, 85 P. 2d 242; *Fleming* v. *Howard,* 150 Cal. 28, 87 P. 908; *Stetson* v. *Youngquist,* 76 Mont. 600, 248 P. 196.

In this case Zollinger shows and the court found an open, and continuous use for the prescriptive period. The presumption that the use was against the landowner therefore arises. The evidence tending to rebut that presumption and to show the use of the road was *under* the landowner, according to Mrs. Frank's contentions, is as follows:

It is contended that the road and the gate in the fence at the west terminus of the road were opened for and used by the landowner and that Zollinger's use of the road did not injure the land and did not interfere with the landowner's use of same and therefore his use was permissive and under the landowner. In the early case of *Harkness* v. *Woodmansee,* 7 Utah 227, 26 P. 291, 293, this court recognized the principle as follows:

> "Where a person opens a way for the use of his own premises, and another person uses it also without causing damage, the presumption is, in the absence of evidence to the contrary, that such use by the latter was permissive, and not under claim of right."

The facts of this case do not bring it within the above quoted rule from *Harkness* v. *Woodmansee* because the evidence does not support the proposition that this road was opened by the landowner for his own use. The record shows that the landowner used the road only infrequently and then used only a portion of it. Zollinger used the road at such times as he desired which was much more frequently than the landowner and Zollinger used the entire length of the road not just part of it.

The evidence shows that the strip of land used was not readily susceptible for use as farm land because it was higher than the surrounding land and difficult to irrigate. It is contended that because of the condition of the land the landowner had no reason for keeping persons from using the land and therefore a normal inference would be that the use was permissive. See *Schudel* v. *Hertz*, 125 Cal. App. 564, 13 P. 2d 1008. Again the facts of the case do not justify the suggested inference. This land was enclosed by a fence. The landowner was using part of the strip for an irrigation ditch and part for a road. It is not in accordance with the facts to say that the landowner had no reason for keeping other persons out.

The record reveals that at one time the bridge across the irrigation ditch on the road caved in necessitating the removal and replacement thereof. A son of the landowner removed the broken bridge. He immediately told Mr. Zollinger of his actions and Zollinger replaced the bridge with a culvert at his own expense. The fact that Zollinger replaced the bridge at his own expense is consistent with both use of the road under and use against the landowner because in the ordinary case the easement owner must keep it in repair and if the use were under the landowner a reasonable condition of the permissive use might be that Zollinger would have to maintain the road himself. However, a fair inference from the fact that a son of the landowner immediately notified Zollinger as soon as he had made the road impassable is that at least one of the persons closely

connected with the landowner recognized that Zollinger had some right to use that roadway.

The record shows that Zollinger had several conversations with Mrs. Frank shortly before the trial of this case in reference to the road here involved. The defendant contends that Zollinger in those conversations did not claim any right of way over the land but offered to buy one. Zollinger contends that the offer was not to purchase a right of way but to purchase the land where the road is. It is clear that Zollinger's offer was to purchase the land not the right of way and such an offer is not inconsistent with his present claim of a right of way by prescription over the land.

We are of the opinion that under all the facts and circumstances of this case the lower court did not err in finding the use of the roadway by Zollinger and his predecessors in interest was "adverse" to the landowner.

The next question is: Does a conveyance of the servient estate during the prescriptive period without mention of the user of the roadway interrupt the running of the prescriptive period?

The record shows that on October 23, 1919, and again on July 25, 1926, the servient estate was conveyed without mention in the deeds of the user of the roadway. Defendant contends such conveyances interrupt the running of the prescriptive period.

The defendant cites the case of *Rollins* v. *Blackden,* 112 Me. 459, 92 A. 521, Ann. Cas. 1917A, 875, for the proposition that where an owner of land in which another asserts an easement conveys the same, no exception being made for the alleged right of way, continuity of adverse use is broken. In that case the servient estate was not conveyed—rather it was the claimed easement itself that was conveyed by deed during the prescriptive period which the court held interrupted the running of the prescriptive period.

The other case cited by defendant on this proposition is *Sallan Jewelry Co.* v. *Bird,* 240 Mich. 346, 215 N. W. 349. That case also is not in point as it involved the question of

conveyance of the servient estate terminating a parol license and starting the prescriptive period to run.

In *Mathys* v. *First Swedish Baptist Church of Boston,* 223 Mass. 544, 112 N. E. 228, 229, the servient owner sought to enjoin the adjacent landowner from having his roof project over his land. One defense to the defendant's claim of a prescriptive easement was that there were successive owners of both the dominant and servient estates during the twenty year prescriptive period. The court said:

"Because the occupation was continuously open and adverse, the defendant's prescriptive title is not disturbed by the fact that during the period there were different owners of both the dominant and servient estates."

In *Alderman* v. *City of New Haven,* 81 Conn. 137, 70 A. 626, 628, 18 L. R. A., N. S., 74, there were at least four conveyances of the servient estate during the fifteen year (Conn. rule) prescriptive period. These conveyances did not mention the use being made of the servient estate by the claimant. The court in holding that an easement by prescription was acquired by the claimant said,

"The possession and use were so open, visible, and apparent, and of such a nature, that, in the absence of actual knowledge thereof and of their adverse character *on the part of the successive fee owners,* such knowledge will be imputed to them. [Cases cited.] The continuity of these conditions was unbroken from the beginning. Such conditions have therefore attended the maintenance by the defendant of this sewer along its present route that a legal right to so maintain it was perfected, and an easement therefor created by prescription long before the plaintiff became the owner of her land." (Italics added.)

In the following case the facts showed that the servient estate had been conveyed during the prescriptive period without mention in the deeds of the use being made of that estate. *Groshean* v. *Dillmont Realty Co.* 92 Mont. 227, 12 P. 2d 273; *Johnson* v. *Allen,* 33 Ky. Law Rep. 621, 110 S. W. 851; *Davis* v. *Wilkinson,* 140 Va. 672, 125 S. E. 700; *C. B. Alling Realty Co.* v. *Olderman,* 90 Conn. 241, 96 A. 944. In these cases the courts did not intimate that such con-

veyances during the prescriptive period interrupted the running of that time and in each case a prescriptive easement was held to have been created.

The conveyance of the servient estate in and of itself during the prescriptive period does not interrupt the running of that time. However, the change of ownership of the servient estate during the prescriptive period may become important in determining whether the servient estate owner knew or should have known during the entire prescriptive period that the claimant was using the claimed right of way. It is possible that the claimant's use of the road could have been brought home to the first owner of the servient estate but that the subsequent owner was not informed of the use and the use itself was not patent enough to put him on notice. But such is not this case. Zollinger used the road openly and the road was clearly and at all times visible. Any purchaser of that land would be charged with notice that the road was being used by Zollinger in connection with his own land.

There is no merit in the contention that the conveyance of the servient estate during the prescriptive period interrupted the user. We have carefully considered all the other questions raised by this appeal and find in them no reason for reversing the lower court.

The judgment of the lower court is affirmed. Costs to respondent.

LARSON, C. J., and McDONOUGH, PRATT, and WADE, JJ., concur.