412 P.2d 314

Elmer J. RICHINS, Blanche E. Richins and Zella F. Harries, Plaintiffs and Appellants,

v.

Merle R. STRUHS and Jackie Struhs, his wife, Defendants and Respondents,

Leslie C. GOLD and Floris C. Gold, his wife, William F. Salt and Della Jo Salt, his wife, and Clara M. Whipple, Third-Party Defendants.

No. 10402.

Supreme Court of Utah.

March 15, 1966.

Rawlings, Wallace, Roberts & Black, John L. Black, Salt Lake City, for appellants.

Joseph P. Bosone, Allen H. Tibbals, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs, Elmer J. and Blanche Richins, and Zella F. Harries, seek to compel defendants, Merle R. and Jackie Struhs, to remove a fence which they erected in a driveway which had been used jointly for upwards of 40 years between their two properties in Emigration Canyon; and to have an easement by prescription for joint use of the driveway declared in plaintiffs.

Trial was to the court. From judgment for defendants, plaintiffs appeal.

 It should be noted that this attempt to assert and establish an interest in land, the legal title to which is vested in another, is a proceeding in equity. It is the duty and the prerogative of this court to review both the law and the facts,[1] and to consider the weight and sufficiency of the evidence.[2] However, in such cases we make allowance for the advantages the trial court has because of proximity to the parties, the witnesses and the trial.[3] But in situations such as the instant one, where there is substantially no dispute as to the essential facts, and rights are to be determined largely upon the application of principles of law and equity, the advantages referred to are not of any great importance.

Emigration Canyon is one of several canyons in the Wasatch Mountains just east of Salt Lake City in which city residents have from early times had summer homes. The parties to this action own adjoining homes fronting on Emigration Creek which separates them from the public road. Until the defendants built the fence referred to, the approach to both properties has been for more than 40 years by a common roadway and bridge over the creek. Their predecessors in interest, John M. Whipple of the defendants and Leo A. Jones of the plaintiffs, were brothers-in-law. In 1918 they and their families jointly constructed the bridge and roadway and so maintained and used it so long as they owned the properties (until the 1950s, since when there have been several transfers). The same condition persisted until recently. In 1960 the defendants Struhs purchased the Whipple property. They caused a survey to be made and thereafter erected a fence in the driveway on what they assert is the true boundary, leaving but a small portion of the driveway on the Jones' (plaintiffs' predecessors) side which blocks the latter's use of the driveway and prevents access to their property. The lawsuit resulted.

 The trial court appears to have been of the opinion that because the Whipples and the Joneses were relatives and that they used the driveway harmoniously and without conflict, that the use was permissive and that therefore no prescriptive right to use the driveway arose. The difficulty with this view is that it does not give effect to fundamental principles applicable to prescriptive rights. The origin and purpose of their recognition arises out of the general policy of the law of assuring the peace and good order of society by leaving a long established status quo at rest rather than by

1. Tanner v. Provo Reservoir Co., 99 Utah 139, 98 P.2d 695.

2. Christenson v. Nielsen, 88 Utah 336, 54 P.2d 430.

3. Nokes v. Continental Min. & Mill. Co., 6 Utah 2d 177, 308 P.2d 954.

disturbing it. In order to serve this purpose, when a claimant has shown that such a use has existed peaceably and without interference for the prescriptive period of 20 years,[4] the law presumes that the use is adverse to the owner[5]; and that it had a legitimate origin.[6] The latter presumption is usually placed on the ground that there was a lawful grant of such right, but that it had been lost. It is appreciated that this lost grant theory is fictional. But the theory upon which the presumption rests is not important. Whatever theory it may be based upon, what is significant is that it has a well justified and salutary purpose which is in conformity with the policy just discussed; and that it is so well established in our law that its validity is no longer open to question. Consequently it should be given effect to prevent the very thing which defendants have attempted here: the upsetting of a situation which has existed amicably since "the memory of man runneth not to the contrary."[7]

We think it pertinent to here acknowledge that in this, as in most situations of controversy, there is another side of the coin to be kept in mind; and that we do not lose sight of certain propositions advocated by the plaintiff in regard to a permissive use where that in fact exists. The presumption above mentioned that a use is adverse which arises from its continuance for a long period of time is not absolute. It would not preclude the owner of the servient estate (defendants herein) from proving that the use was by permission. If he sustains that burden and overcomes the presumption by proof that the use was initially permissive, then the burden of going forward with evidence and of ultimate persuasion shifts back to the claimant to show that the use became adverse and continued for the prescriptive period.[8] This is so because a claimant should not be permitted to in effect "sneak up" on the owner by using his property under permission and then after a lapse of time claim he was using it as a matter of right.

It is true indeed that the use must have been such that it is plainly apparent that the claimant is asserting a right so the servient owner either knows or should know that his property is being so used. If the use is in fact adverse and appears to be so, that is all that is required. Even though

---

4. That the time for establishment of a right of way by prescription is 20 years, see Cassity v. Castagno, 10 Utah 2d 16, 347 P.2d 834.

5. See Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 170 A.L.R. 770 and authorities therein cited; Thompson on Real Property, Vol. 1, § 394 (Perm.Ed.1939).

6. See Thompson on Real Property, Vol. 1, p. 678 (Perm.Ed.1939).

7. This is the phrase which has been given historically as the basis for recognizing a prescriptive right, see Thompson on Real Property, Vol. 1, p. 677 (Perm.Ed. 1939).

8. See Lunt v. Kitchens, 123 Utah 488, 260 P.2d 535; Buckley v. Cox, 122 Utah 151, 247 P.2d 277.

it is sometimes referred to as a hostile use, it is not necessary that there be any open hostility manifest in the use of force or any overt physical or verbal opposition if the condition just stated is met. It is not the policy of the law to encourage violence by rewarding it; and it generally does not make the protection or the acquisition of rights dependent upon it. The fact that the parties (predecessors) were friendly, or even cordial with each other, as they appear to have been, does not prevent a prescriptive right from coming into being.[9]

The circumstances concerning the establishment of this common driveway and bridge were elicited from the former owners, Mr. Jones and Mrs. Whipple, both now in their 80s. There was no disagreement of any consequence in their evidence that: their respective families collaborated in constructing this driveway and bridge between the two properties on what was assumed to be the boundary; that it was for their joint use; that it was so used and maintained so long as they owned the property. Mr. Jones affirmed that the driveway was partly on Whipple's property and partly on his own. As to where the property line was, he answered:

"A. Well, I think we had about a third of it or maybe a little better."

In order for the use to have been permissive it would have to appear that the parties understood that the driveway was upon the Whipple's (defendant's predecessors) property; that it was with this understanding that they gave their consent to its use; and similarly that the Joneses (plaintiffs' predecessors) so understood and accepted and used it. No such view of the facts is warranted by the evidence. On the contrary when it is considered in the light of the principles of law and equity herein discussed, it is our opinion that the reasonable conclusion to be drawn from the facts here shown, where the parties (predecessors) jointly established and used a driveway on what they thought their common boundary,[10] is that the use meets the requirement of being open, notorious, continuous and adverse for more than 20 years and therefore has established a prescriptive right to continue to so use it. It is therefore necessary that the judgment be vacated and a decree entered in accordance with this opinion. Costs to plaintiffs (appellants).

McDONOUGH, WADE, and CALLISTER, JJ., concur.

HENRIOD, Chief Justice (concurring).

9. Zollinger v. Frank, footnote 2, supra; Restatement of Property, § 458, comment to subsection a.
10. That the use of a driveway on common boundary, partly on land of each for prescriptive period results in easement see Thompson on Real Property, Vol. 2, § 345 (1961 Replacement), citing Shanks v. Floom, 162 Ohio St. 479, 124 N.E.2d 416; see also Rannels v. Marx, 357 Mich. 453, 98 N.W.2d 583.

I concur, not because of any discussion of "permissive" or "adverse" user, but because it is conceded that part of the way over which the bridge was built and used for many more than 21 years, without complaint by anyone, was owned partly by one and partly by the other of the adjoinants. This should end the matter.

The language of Sec. 345, Thompson, Real Property, 1961 Replacement, cited in the main opinion, that "Use of driveway situated half on each adjoining owner's land for 21 years by both landowners will result in a *prescriptive easement* under claim of right and adverse use by both adjoining landowners to the other half of the driveway," controls or should control. Under this doctrine inversely time is of the essence, irrespective of "permissive" or "adverse" user in the common connotation of the last term. Such a result reflected in Thompson is based on happy, convivial friendship, love and affection, not hostility or fee-fighting rock-throwing,—all of which means, in my opinion, that after a 21-year period should not place a Johnnie-come-lately, after 40 years user, in any role of a saintly, not sardonic supplicant for relief against his erstwhile pacific neighbor.

I think the defendants in putting up the gate without any official legal sanction defied the very equity they assert. The gate should be taken down, in equity and good conscience, and the question of damages for any unwarranted action in this respect should be canvassed.