494 P.2d 944

CACHE COUNTY DRAINAGE DISTRICT NO. 5, a quasi corporation of the State of Utah, Plaintiff and Respondent,

v.

W. R. WESTOVER et al., Defendants and Appellants.

No. 12151.

Supreme Court of Utah.

March 9, 1972.

4. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Olson, Hoggan & Sorenson, L. Brent Hoggan, Logan, for defendants and appellants.

Mann & Hadfield, Walter G. Mann, Brigham City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a judgment to the effect that plaintiff had acquired a prescriptive right to employ a drainage ditch running through defendants' farm lands, by more than 20 years continuous adverse user thereof, which judgment also enjoined defendants Westover from obstructing the drain. Reversed with costs to defendants.

The drain and properties involved roughly are illustrated by the subjoined amateur and unscaled sketch:

[719Z]

The evidence stated in a light most favorable to the judgment, quite strangely was elicited by *defendants'* witnesses,—the plaintiff having presented no direct evidence anent the "adverse user" factor required in acquiring a prescriptive right,—but largely relying, apparently on continuous user for more than 20 years,[1] buttressed by the presumption that such user is adverse, as enunciated in our rather recent case of Richins v. Struhs,[2]—upon which plaintiff most heavily leans.

The evidence most favorable to the judgment, which is reflected in the record and quite accurately reported almost identically in both briefs, fairly may be abstracted as follows:

From the defendants' brief, the following is shown: 1) *Defendants' witness Bergeson:* During the time the drain was used, owners north and east in the N.E. ¼ of Sec. 12 have used it; that he, Bergeson (user of the drain south ·and west of the Section) never objected to the use; that he knew of no other users having objected to such use; 2) *defendant Iwomoto,* on cross-examination, being asked if plaintiffs' users (stockholders) used the drain against his will, making the ditches wider, he said "Well, as long as a use is use, *it wasn't hurting us;* 3) defendant Westover* said that he had never objected to use of the ditch by adjoining landowners who did not participate in the cost of it; 4) *defendants' witness Bergeson* on being asked that even though he knew there was a bad erosion problem in 1959, he answered that "the erosion hadn't started in '59." This, if true, would preclude prescription until 1979. (It also must be noted that Bergeson was testifying as to some erosion taking place nearly two miles downstream from any land owned by any of the defendants, where the water spilled over a steep bluff before entering Bear River, on land owned by one Sorenson,—no defendant here.)

From the plaintiff's brief, 1) *Iwomoto's testimony* mentioned above was repeated verbatim, with the following colloquy addendum: "Q: I thought you said it was making your ditch wider and you didn't like that. A: Yeah, but we didn't stop them"; 2) where the question of erosion was being pursued, plaintiff's brief excerpted some testimony given by Bergeson, *defendants' witness,* to the effect that when he put the pipe in the ditch near where the water therefrom entered Bear River, *in 1959* there was "not a tremendous amount" of erosion, that "it had started, and of course when it once starts it can go fast" and that he supposed that each bit of erosion would have its effect, naturally, and that from the beginning of

1. Cassity v. Castagno, 10 Utah 2d 16, 347 P.2d 834 (1959).

2. 17 Utah 2d 356, 412 P.2d 314 (1966).

the drain *down here* there was an erosion that was a natural condition and had its effect on the use of the ditch.

The above abstracted testimony is all that either side points to that might reflect on the fact of erosion. There is no substantial evidence of an erosion along the drain, except as noted constituting damage of such consequence as to connote an adverse user in the sense that the term is used in perfecting a prescriptive right, and the record reflects no objection to the use of the drain or any erosion at a point where the water was about to enter the river about two miles from any property owned by any of the defendants, *until 1969,*—to which conclusion the testimony recited by both parties attests. We can see nothing in the testimony offered by either or both sides in support of their contentions, justifying the trial court's finding that "there was damage by way of erosion over the past years," (except near the Bear River) in the sense that it exceeds any natural and/or expected erosion that would reflect any open, notorious and hostile or adverse encroachment upon the vested rights of others. As a matter of fact, in exercising our discretion to review the facts as well as the law in this equity case,[3] we are constrained to and do conclude that the testimony recited by both parties here, reviewed in any kind of a light, points up proof of a permissiveness on the part of defendants that destroyed the presumption of adverse user mentioned above, and that the plaintiff thereafter did not sustain its burden of proving any adverse user, as it must,[4] by clear and convincing evidence.[5]

The trial judge, in a memorandum opinion, said that "the prescriptive easement would appear to apply to the ditch from its point of origin to where it empties into the Bear River."[6] A 30-day stay of execution was given so "that the parties may arrive at an agreement between themselves" to determine an equitable proration of the costs of operating and maintaining the ditch. The parties could not agree. This court attempted to get the parties to reconcile their difficulties, but to no avail.

The dissent by Mr. Justice Crockett does not answer the obvious fact that the pre-

3. See Richins v. Struhs, supra.

4. See Richins v. Struhs, supra.

5. Buckley v. Cox, 122 Utah 151, 247 P.2d 277 (1952).

6. It appears that the court exceeded its jurisdiction since four landowners downstream were not parties to this litigation. This error was corrected in the official Findings which extended only to the property line of the last defendant having land adjoining the ditch. It points up, however, the difficulties in this case, which this court would recommend be solved by agreement, if possible of all parties concerned, or by further examination under the court's retained jurisdiction.

sumption of creation of a right by peaceful user of other's properties over a long period of time, upon which he leans, successfully was rebutted by the evidence reflected in the record in this case. Mr. Justice Crockett fails to point out one single fact shown in the record to sustain a conclusion of an adverse user by plaintiff, hostile to defendant's ownership. The difficulty with the dissent is that it assumes evidence to be extant, without any proof, save a naked presumption, compounding a trial court's affirmative finding of an adverse user *on the evidence adduced*,—there being no basis for such conclusion. Even the trial court did not base its decision on a presumption, as the dissent does,—and such conclusion, of necessity, is conceded by the dissent by its quotation of the court's "Paragraph 4 of the findings" of fact. Had the trial court decided this case as the dissent presumes to, the court would have been duty bound to have concluded that the presumption was decisive of the case and there were no facts to rebut it. The dissent falls into error, inconsistently conceding that this case was decided on the facts when it talks about the prerogative of the court to judge the credibility of the evidence. The difficulty is that there were no facts to support the trial court's judgment. *All the facts* relating to a prescriptive right are recited in this main opinion, and a successful challenge can be urged for either and both the trial court and Mr. Justice Crockett to state any different facts found in the record.

The record reflects that this drainage ditch with a prescriptive dominant right would split almost in half and make servient six valuable properties owned by six different farmers. Such a decision would not comport with the decision in Buckley v. Cox, supra, which says those claiming "the right to use the driveway by prescription . . . have the burden of establishing such claim by clear and convincing evidence" (2 Tiffany, Real Property (2d Ed.), Sec. 519, p. 2046).

In view of our decision here, the other points raised on appeal become moot.

CALLISTER, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (dissenting):

I dissent and would affirm the findings and the decree of the trial court.

The pivotal problem is whether there is a prescriptive easement in the plaintiff to continue to maintain the drainage ditch which it is not subject to question has been in use for more than twenty years. The plaintiff's position is that the use has been open, notorious, continuous and adverse under a claim of right so that the prescriptive easement is established.[1] Defendants contend to the contrary, and that the use

---

1. See Richins v. Struhs, footnote 2 of the main opinion.

has been with their permission so that no such prescriptive right has come into being. The trial court found in favor of the plaintiff.

. Paragraph 4 of the findings states:

. That the use of said drain by the plaintiff after the construction of said drain has continuously, from the beginning of said use, caused damage by way of erosion over and above the erosion created by the owners thereof or their predecessors in interest and others for their own use. *That said use by the plaintiff was not permissive and said use by plaintiff did interfere with and cause damage to the defendants right of way, during all of said time.* (Emphasis added.)

It should be the policy of the law to safeguard the peace and good order of society by leaving any long established essential and practical activities in status quo. Consonant therewith when a party has shown that such use as the one here in question has been exercised peaceably and without interference for a period of twenty years, it is presumed that the use is done as a matter of right[2] and adverse to the owner of the land or anyone who would claim to the contrary,[3] and his right to do so cannot be disturbed.[4]

The testimony upon which the defendants must necessarily rely in showing that the use was permissive and therefore not adverse to them is commendably set forth in the main opinion. However, in my view, that testimony does not defeat the finding (paragraph 4 quoted above) of the trial court. Several observations are pertinent thereon: First, it is the prerogative of the trial court to judge the credibility of the evidence and to determine the facts. He is not required to believe the testimony of witnesses, particularly where that testimony may be affected by self-interest.[5]

Second, he is permitted to draw reasonable inferences from facts shown.

While it is true that the use must have been adverse, it is not necessary that there be shown that there was any opposition by way of the use of force or even verbal opposition. What is necessary is that the use must have been such that it is plainly apparent that the claimant is using the ease-

2. See Thompson on Real Property, Vol. 1, p. 678 (Perm.Ed.1939).

3. See Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 170 A.L.R. 770 and authorities therein cited; Thompson on Real Property, Vol. 1, Sec. 394 (Perm.Ed.1939).

4. That the time for establishment of a right of way by prescription is 20 years, see

Cassity v. Castagno, 10 Utah 2d 16, 347 P.2d 834.

5. See Jensen v. Logan City, 96 Utah 522, 88 P.2d 459; McGowan v. Denver & R. G. W. R. R. Co., 121 Utah 587, 244 P.2d 628; Kelly v. Jones, 290 Ill. 375, 125 N.E. 334, 8 A.L.R. 796; 32A C.J.S. Evidence § 1038, p. 727 (1964); 20 Am.Jur. 1031.

ment in such a manner that the servient owner either knows or should know that the user claims the right to do so and that the use continues to be open, notorious, continuous and adverse for more than twenty-year prescriptive period.[6] When such a use has continued for the twenty-year prescriptive period, the party so adversed should not be permitted to defeat the acquired right by simply saying "Oh well—after all, I didn't really care—until now." The avowal of such an attitude seems a little difficult to reconcile with the controversy which now exists, and with Westover's filling the drain.

It is my opinion that the facts shown, including that the use was causing damage to the defendants "during all of said time," together with the fair and reasonable inferences to be drawn therefrom, provide a basis for sustaining the trial court's determination that there was the required adverse use, so that the plaintiff should not now be denied that right.

The necessity for some means of drainage of the lands in question is so obvious as to require no comment beyond statement of the fact. It is further my impression that the trial court was well advised in providing in the concluding paragraph of the decree that it is:

ORDERED, ADJUDGED AND DECREED that this court does hereby retain jurisdiction for a further hearing, if it becomes necessary, for the purpose of fixing and determining the equitable share of cost of operating, maintaining, improving and expanding this said drainage system so as to accommodate the flow of water for each and all of the users thereof.

From what I have said above it appears to me that if the proper deference is allowed for the advantaged position of the trial judge, and his recognized prerogatives, there is nothing shown sufficiently persuasive to overturn the findings and decree.

ELLETT, J., concurs in the dissenting opinion of CROCKETT, J.

6. Richins v. Struhs, footnote 2 of the main opinion.