No. 14649

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

MAUDE J. WIEDMAN,

Plaintiff and Appellant,

vs.

TRINITY EVANGELICAL LUTHERAN CHURCH
and THE CITY OF KALISPELL,

Defendants and Respondents.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

James A. Cumming argued, Columbia Falls, Montana

For Respondents:

Murphy, Robinson, Heckathorn and Phillips, Kalispell,
Montana
I. James Heckathorn argued, Kalispell, Montana

---

Submitted: February 21, 1980

Decided: APR 1 - 1980

Filed: APR 1 - 1980

_Thomas J. Kearney_ _____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Maude Wiedman brought this action in the Eleventh Judicial District, Flathead County, to establish an easement by prescription for the use of certain land which adjoined her property. By her suit she also attempted to enjoin the City of Kalispell and the Trinity Evangelical Lutheran Church from implementing a special improvement district plan for installation of curbs and gutters along Washington Street in Kalispell without cutting a curb at the entrance to properties she had used for access for years.

The Honorable James M. Salansky held a trial without a jury on the issue of whether Ms. Wiedman had established an easement by prescription over the property in question. Judge Salansky found Ms. Wiedman's use of the property had been permissive and concluded that she had not established an easement by prescription. Judgment was entered accordingly. This appeal followed.

Ms. Wiedman and her former husband purchased a parcel of property from the Kalispell Townsite Company in 1934. The property was located just outside the city limits of Kalispell on the northwest corner of Washington Street and Fourth Avenue. The property is marked as the "Weidman Property" on the map below.



About a year after they purchased the property, Ms. Wiedman and her husband were divorced and the property was conveyed to Ms. Wiedman's sole ownership. She has remained the sole owner of the property ever since.

When Ms. Weidman and her former husband purchased the property they expected the Townsite Company to extend Fourth Avenue northward along the eastern boundary of the property. They built a house on the property oriented to the expected future street. Ms. Wiedman used the west portion of the expected extension of Fourth Avenue in a manner which anticipated its later dedication. She situated her garage so that its entrance faced the future street. Ms. Wiedman parked cars on the expected avenue, and when friends and family visited they parked their vehicles on the same location. This use continued daily from 1934 until the present.

It is over this access route that Ms. Wiedman now claims a prescriptive easement. The property includes the west 35 feet of what would have been Fourth Avenue for 75 feet north of Washington Street adjacent to Ms. Wiedman's property. It is marked "claimed easement" on the map. It should be pointed out that Ms. Wiedman does have a door to her house that faces south toward Washington Street. She also can gain access to her garage via an alley running parallel to her property on the west, although this would require her to remove some trees and change the door on her garage.

About five years after Ms. Wiedman purchased her property, the Townsite Company decided not to dedicate the extension of Fourth Avenue for street purposes. The Company approached Ms. Wiedman with an offer to sell the property to her. She did not buy the property, apparently feeling no

need to buy property that was a public street. The Company subsequently sold the property to a Mr. Scovel, who lived in a home located immediately to the north of Ms. Wiedman's property.

Not long after Mr. Scovel purchased the property, he and Ms. Wiedman had a conversation about the sale of half the property to Ms. Wiedman. Mr. Scovel is now deceased. Ms. Wiedman recalled the conversation in a deposition taken before trial as follows:

"Q. [Mr. Heckathorn] Who is that [who owned the property before Trinity Lutheran Church]?

"A. [Ms. Wiedman] Clyde Scovill [sic]. And he said he would never try to stop me from coming in there.

"Q. He had it all the time until the Trinity Lutheran Church had got it?

"A. Yes.

"Q. And he said that you could use it anytime you wanted to?

"A. Yes.

"Q. And did the church ever say you couldn't?

"A. No.

"Q. They have just let you use it, too, haven't they?

"A. Yes."

At trial Ms. Wiedman testified concerning the conversation as follows:

"Q. [Mr. Heckathorn] And so he [Mr. Scovel] then bought it [the property in question] and he then told you that as far as he was concerned you could use that area and he wouldn't attempt to stop you, isn't that correct?

"A. [Ms. Wiedman] And he went on to say-- I don't remember the exact conversation. I suppose it was to that effect. But he said he didn't think he could stop me if he wanted to.

"Q. But anyhow he conveyed to you that he didn't want to try to stop you and that you could go ahead and use it.

"A. I think he wanted to, all right, but he didn't want to pursue it.

"Q. Did he indicate that you could continue to use it as long as he had it?

"A. Well, I used it as long as he had it and I have used it ever since.

"Q. After that discussion did you and he ever have any further discussion about that?

"A. I don't believe we did. There was nothing to discuss. He wouldn't sell me half of it for a driveway so it was dropped.

"Q. And then the Trinity Church people came in and bought it and, as I understand it, they just bought out Scovill's [sic] interest and you had no contact with them and they had no contact with you.

"A. None whatsoever."

Respondent Trinity Evangelical Lutheran Church purchased the property over which Ms. Wiedman now claims the easement from Mr. Scovel in 1957. The church constructed an elementary school on property adjacent to the disputed property. Trinity made little use of the disputed property after it was acquired. The church now plans to expand the school facilitites. The plans include extension of the school playground to utilize the property over which Ms. Wiedman claims the easement. In expanding the playground, Trinity plans to fence the property and have curbing installed along Washington Street. The City of Kalispell agreed to install the curbing. Ms. Wiedman brought this suit when the City began installing curbing without cutting out a portion of the curb to allow her access to the property over which she claims the easement.

The sole issue presented by this case is whether the District Court erred in finding that Ms. Wiedman's use of the property in question was permissive.

To establish a prescriptive easement, the party claiming the easement must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the statutory period. Medhus v. Dutter (1979), ___ Mont. ___, 603 P.2d 669, 672, 36 St.Rep. 2044, 2047; Garrett v. Jackson (1979), ___ Mont. ___, 600 P.2d 1177, 1179, 36 St.Rep. 1769, 1771; Hayden v. Snowden (1978), ___ Mont. ___, 576 P.2d 1115, 1117, 35 St.Rep. 367, 369; Taylor v. Petranek (1977), 173 Mont. 433, 437, 568 P.2d 120, 122; Harland v. Anderson (1976), 169 Mont. 447, 451, 548 P.2d 613, 615. The controversy here centers around the District Court's finding that Ms. Wiedman's use of the property in question was permissive rather than adverse. In Taylor, supra, the Court stated:

> "The legal principles governing defendants' attack on the sufficiency of the evidence to support the district court's findings are clear. Rule 52(a), M.R.Civ.P., provides in pertinent part:
>
> "'. . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses . . .'
>
> "This Court's function on appeal is simply to determine whether there is substantial evidence to support the district court's findings and will not reverse them unless there is a clear preponderance of evidence against them. Merritt v. Merritt, 165 Mont. 172, 526 P.2d 1375; Finley v. Rutherford, 151 Mont. 488, 444 P.2d 306." 173 Mont. at 437, 568 P.2d at 122.

The evidence before the trial court that the use was permissive consists mainly of the testimony of Ms. Wiedman concerning her conversation with Mr. Scovel about her use of the property. In her deposition Trinity Lutheran's attorney asked Ms. Wiedman, "And he [Mr. Scovel] said that you could use it [the property in question] anytime you wanted to?"

-6-

Ms. Wiedman answered "Yes." At trial the church's attorney asked Ms. Wiedman, "And so he [Mr. Scovel] then bought it [the property in question] and he then told you that as far as he was concerned you could use that area and he wouldn't attempt to stop you, isn't that correct?" Ms. Wiedman responded, "And he went on to say-- I don't remember the exact conversation. I suppose it was to that effect. But he told me he didn't think he could stop me if he wanted to." (Emphasis added.)

Presented with this type of evidence, it cannot be said the findings of the District Court were clearly erroneous. There certainly is no clear preponderance of the evidence against the finding that the use of the disputed property was permissive. In fact, the testimony indicates Mr. Scovel did indeed give Ms. Wiedman permission to use the property. We therefore uphold the finding of the trial court that Ms. Wiedman's use of the disputed property was permissive.

When a party's use of property is permissive at its inception, the use cannot ripen into a prescriptive right unless there is a later distinct assertion of a right hostile to the owner, which is brought to the attention of the owner, and the use is continued for the full prescriptive period. Medhus, supra, 603 P.2d at 672, 36 St.Rep. at 2047-2048; Taylor, supra, 173 Mont. at 438, 568 P.2d at 123; Wilson v. Chestnut (1974), 164 Mont. 484, 491, 525 P.2d 24, 27.

The above discussion shows that Ms. Wiedman's use of the disputed property was initially permissive. Before her use of the property could become hostile and eventually ripen into a prescriptive right, Ms. Wiedman would have had to make some positive assertion of the hostile nature of her

use of the property and bring the fact of her hostile use to the attention of the owner of the property. The record is totally devoid of any such action by Ms. Wiedman. She testified that she and Mr. Scovel did not discuss her use of the property after their conversation in which he granted her permission to use the property. The evidence also shows that Ms. Wiedman never discussed her use of the property with the owners of Trinity Evangelical Lutheran Church.

Ms. Wiedman's use of the property was thus permissive at its inception and continued to be so up to the time she initiated this action. The trial court therefore correctly concluded Ms. Wiedman did not gain the right to use the disputed property by prescription. We affirm that conclusion on this appeal.

_____
Justice

We concur:

_____

_____
Justices

_____
Honorable Peter G. Meloy, District Judge, sitting in place of Mr. Chief Justice Haswell.

-8-

Mr. Justice John C. Sheehy dissenting:

I cannot agree that a person who has used as a drive-way a strip of land belonging to three other successive owners over a period of forty five years has not established open, notorious, exclusive, adverse, continuous, and un-interrupted use of the easement to establish her prescriptive right to the continuance of that use. Medhus v. Dutter (1979), ___ Mont. ___, 603 P.2d 669, 36 St.Rep. 2044, 2047.

The ground upon which the majority find a permissive use here is that Mr. Scovel, prior to 1957, had a conversation with Mrs. Wiedman, which at best is equivocal, and out of which the court finds a permissive use. What is ignored here is that the ownership changed in 1957, and that since that time, Trinity Evangelical Lutheran Church, although the ostensible owner of the property, has done nothing in the face of the continued adverse, notorious and open use of the driveway by Mrs. Wiedman over what was then the church's property. Even if we assume that her use under Scovel was permissive, there is no presumption of law that continues such permissive use when the ownership changes hands and there is no indicia of any kind that the subsequent owner continues the permission.

In this case, the prior owner had established a gate or barrier at the north end of the area over which Mrs. Weidman claimed an easement. This is strongly indicative that the prior owner acquiesced in Mrs. Wiedman's right under an adverse user. An owner's acquiescence in an adverse user of a driveway across his land without more, does not show that the use, claimed to be adverse, was in fact permissive. Dozier v. Krmpotich (1949), 227 Minn. 503, 35 N.W.2d 696.

-9-

There was no showing in this case that the user was permissive "in the inception", which is the foundation requirement for proof of a permissive use. The majority has confused "permissive" use in this case with the "acquiescence" that always accompanies an adverse use.

> ". . . The very foundation of a right to an easement by prescription is the acquiescence by the owner of the servient tenement in the acts relied upon to establish such prescriptive right. 17 Am.Jur., Easements, section 66. It is also the rule that, where the user is permissive on the part of the owner, there can be no prescriptive right, and that, if the user was permissive in its inception, it must become adverse to the knowledge of the owner of the servient estate before any prescriptive rights can arise (citing a case.) It must be apparent therefore, that 'acquiescence', regardless of what it might mean otherwise, means, when used in this connection, passive conduct on the part of the owner of the servient estate consisting of failure on his part to assert his paramount rights against the invasion thereof by the adverse user.. . ." Dozier v. Krmpotich, supra, 35 N.W.2d at 699. (Emphasis added.)

The conversation with Scovel, begun long after the inception of the use of the driveway, and after which Scovel acted in acquiescence in placing the barrier as he did, shows that Scovel agreed with plaintiff's claim of right, and acquiesced in a manner that made his land servient to the prescriptive right of Mrs. Weidman to her driveway.

I would reverse.

John C. Sheehy
Justice

-10-