Ethel P. **GREEN**, Personal Representative of the Estate of Duane Green, Plaintiff and Appellee,

v.

Boyd **STANSFIELD**, Joe Stansfield, and Bill Stansfield, Defendants and Appellants.

No. 930603–CA.

Court of Appeals of Utah.

Dec. 1, 1994.

---

Shelden R. Carter and Brook J. Sessions, Provo, for defendants and appellants.

Dallas H. Young and Jerry L. Reynolds, Provo, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Boyd, Joseph and William Stansfield (the Stansfields) appeal from a summary judgment in favor of the estate of Duane Green and a decree enjoining them from interfering with the flow of water in an irrigation ditch that crosses property owned by Duane Green (both Duane Green and his estate will be referred to herein as "Green"). The trial court rejected the Stansfields' claim that they owned an easement across Green's property. We affirm.

## BACKGROUND

This case concerns the legal status of an irrigation ditch running across four contiguous parcels of land in Utah County. Howard Miller and his father, who owned the parcel designated as N390–A, dug the ditch in 1947 or 1948 with the permission of the adjoining landowners. The Millers farmed their land between 1946 and 1978, using irrigation water obtained through the Goshen Irrigation and Canal Company. Water allotted to the Millers was apparently more than adequate to irrigate N390–A, so they dug the ditch to convey the excess water across Harold Jensen's land (parcels N390–C and N390–B) to parcel N274–A, which was also owned by the Millers. The Millers subsequently transferred N274–A to the Stansfields.

The dispute commenced when Green purchased parcel N–390B, previously owned by Harold Jensen, just south of N274–A. Green built a pond to collect the water for use in watering cattle. The pond, however, prevented water from flowing through the irrigation ditch to N274–A. Subsequently, Bill Stansfield allegedly entered Green's property with a backhoe and breached the pond. Green filed suit, seeking damages and an injunction to prevent the Stansfields from entering his land and interfering with the water in the pond. The Stansfields counterclaimed, asserting that they had a superior right to the water and requesting the declaration of an easement across Green's land.

Green moved for summary judgment on the easement issue, arguing that an easement could not arise because Green's predecessor in interest, Harold Jensen, had granted permission to the Millers to dig the ditch across his land. He argued that without adverse use, there could be no prescriptive easement. The Stansfields also moved for summary judgment to establish the easement. On March 27, 1991, the trial court granted Green's motion and denied the Stansfields'. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). In reviewing a grant of summary judgment, we view the facts in the light most favorable to the losing party. *Druffner v. Mrs. Fields, Inc.,* 828 P.2d 1075, 1076–77 (Utah App.1992). Further, we review the trial court's summary judgment decision for correctness. *Sanderson v. First Sec. Leasing Co.,* 844 P.2d 303, 306 (Utah 1992).

## ANALYSIS

The Stansfields claim they have a use easement to transport water across Green's land. They make two arguments in support of this claim. First, they argue that although the use of the Green/Jensen property for the

irrigation ditch was originally permissive, that use has since become adverse, thus creating an easement by prescription. Second, the Stansfields claim that the use of the land constitutes an unrecorded easement. We consider each of these arguments in turn.

## I. Prescriptive Easement

■ The Stansfields claim their long-time use of the Green parcel created a prescriptive easement. A prescriptive easement may be granted when a use is (1) open, (2) notorious, (3) adverse, and (4) continuous for at least twenty years. *Marchant v. Park City,* 788 P.2d 520, 524 (Utah 1990). Green concedes that the use of the ditch was open, notorious, and continuous, but claims the use was not adverse because the landowners granted permission. The Stansfields, conversely, argue that use of the property became adverse when Harold Jensen died intestate in 1951 because ownership of the property automatically transferred to his heirs, who never granted them permission to use the ditch.

Under Utah law, "[u]pon the death of a person his real and personal property devolves ... in the absence of testamentary disposition, to his heirs." Utah Code Ann. § 75–3–101 (1993). According to this argument, Harold Jensen's land changed hands when he died in 1951, at which point it became incumbent on the heirs to assert their right to preclude others from using the property. Instead, according to the Stansfields, the owners "sat on their rights" until the period for prescription had elapsed. Thus, the Stansfields claim, when Harold Jensen's heirs sold the property to Green, the property passed subject to the easement.

■ Ordinarily, the use of land by a non-owner is presumed to be adverse. *Lunt v. Kitchens,* 123 Utah 488, 260 P.2d 535, 537 (1953). However, the presumption of adverse use "will not arise under mere use by a licensee and knowledge of such use on the part of licensor." *Id.* 260 P.2d at 537–38. Moreover, "[t]he use cannot be adverse when it rests upon license or mere neighborly accommodation." *Id.* 260 P.2d at 538. Of course, the fact that a use was originally permissive does not preclude a later finding

of adverse use. *Richins v. Struhs,* 17 Utah 2d 356, 412 P.2d 314, 316 (1966). However, it is incumbent on the licensee to offer proof establishing the point at which the use became adverse. *Lunt,* 260 P.2d at 539.

■ A permissive use cannot become adverse without notice to the owner of a change in use. The Utah Supreme Court has stated that when the use has been permissive, "the owner of the land is entitled to more notice than the mere use of his land not inconsistent with the license." *Id.* 260 P.2d at 537. Cases from other jurisdictions are in accord with this principle. For example, in *Wiedman v. Trinity Evangelical Lutheran Church,* 188 Mont. 10, 610 P.2d 1149 (1980), the Montana Supreme Court held that a plaintiff who has permissively used a neighbor's land to access her property could not claim an easement by prescription when the neighbor sold the land to someone who terminated the use. That court stated:

> When a party's use of property is permissive at its inception, the use cannot ripen into a prescriptive right unless there is a later distinct assertion of a right hostile to the owner, which is brought to the attention of the owner, and the use is continued for the full prescriptive period.

*Id.* 610 P.2d at 1152. In *City of Anchorage v. Nesbett,* 530 P.2d 1324 (Alaska 1975), the Alaska Supreme Court held that although conveyance of a servient estate generally terminates a license, such "an implied revocation, without more, does not ipso facto transform a permissive use into an adverse one." *Id.* at 1329. However, " 'it does not follow that, if the licensee continues to use the land as before, such use is necessarily adverse to the new owner.' " *Id.* at 1330 (quoting *Sturnick v. Watson,* 336 Mass. 139, 142 N.E.2d 896, 898 (1957)); *accord Scheller v. Pierce County,* 55 Wash. 298, 104 P. 277, 278 (1909) (" 'If permissive at its inception, then such permissive character being stamped on the use at the outset, will continue of the same nature, and no adverse user can arise until a distinct and positive assertion of a right hostile to the owner.' ") (citation omitted).

■ The Stansfields' argument that Harold Jensen's heirs had a duty to assert

their interest in the ditch property to avoid a prescriptive easement is contrary to law. Even assuming that Jensen's property passed to his heirs upon his death, that alone does not create adverse use. The proponent of a change from permissive to adverse use must assert such a right to the owner. Without such an assertion, adverse use cannot arise.

■■■ Nor are we persuaded by the Stansfields' argument that Utah law creates a presumption of adverse use upon a change in ownership. To support this claim, the Stansfields cite *Richins*, 412 P.2d at 315, a case concerning two brothers who jointly constructed a bridge and driveway as the single point of access to their adjoining lots in Emigration Canyon. When the land was later sold, one of the new owners surveyed the property and built a fence along the survey lines. Unfortunately, the fence also obstructed the driveway, blocking access to the adjoining neighbor's property.

The Utah Supreme Court noted that "when a claimant has shown that such a use has existed peaceably and without interference for the prescriptive period of 20 years, the law presumes that the use is adverse to the owner." *Id.* 412 P.2d at 315. However, the court did not hold that this presumption arises when the original use was permissive. Rather, the court stated that the use of the land in *Richins* was always adverse. In fact, the court stated that the use could not have been otherwise, because

> [i]n order for the use to have been permissive it would have to appear that the parties understood that the driveway was upon the Whipple's (defendant's predecessor's) property; that it was with this understanding that they gave their consent to its use; and similarly that the Joneses (plaintiffs' predecessors) so understood and

accepted and used it. No such view of the facts is warranted by the evidence.

*Id.* 412 P.2d at 316. In other words, because defendant's predecessor did not know that the bridge was on his property, he could not have granted permission. By contrast, Harold Jensen and the Millers always knew the ditch was on Jensen's land; both also understood that the use was permissive. For those reasons, no presumption of adverse use arises.

■■■ The Stansfields have not met their burden of demonstrating notice of adverse use to Jensen or his heirs. Without notice, there was no adverse use and no prescriptive easement. Accordingly, the trial court's grant of summary judgment on this issue was appropriate.[1]

## II. Unrecorded Oral Easement

The Stansfields also claim the ditch should be declared an "unrecorded easement" under the former section 57–1–6 of the Utah Code, which was in effect at the time Green purchased the Jensen property. Under section 57–1–6,

> [e]very conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proofs, acknowledgment, certification or record, and as to all other persons who have had actual notice.

---

1. The Stansfields also argue that the issue of whether the use was adverse or permissive after Jensen's death is a question of fact that should preclude summary judgment. We disagree. Because the use of the Jensen/Green property for the irrigation ditch is presumed to be permissive, the Stansfields, in order to defeat a motion for summary judgment, must come forward with *some* evidence demonstrating the use had become adverse. *Hunt v. ESI Eng'g, Inc.*, 808 P.2d 1137, 1139 (Utah App.) (nonmoving party must demonstrate specific material facts that preclude summary judgment), *cert. denied*, 826 P.2d 651 (Utah 1991). Because a change from permissive to adverse use requires notice, it was necessary for the Stansfields to present some evidence of notice to Jensen or his heirs. Because the Stansfields failed to carry this burden, summary judgment was appropriate.

Utah Code Ann. § 57–1–6 (1986), *repealed by* Utah Code Ann. § 57–3–2(3) (1994).[2]

The Stansfields also rely on *Johnson v. Bell*, 666 P.2d 308, 310 (Utah 1983), in which the Utah Supreme Court, citing section 57–1–6, held that the "actual notice" requirement is met when a party dealing with the land had information that, if pursued, would lead to actual knowledge of the state of the title. The Stansfields suggest that because Green was a neighbor and familiar with the area, he was on notice of the existence of the ditch and obligated to inquire as to its status.

■ However, notice is immaterial in the instant case because there was no easement right. An express easement is a contract that requires "mutual assent by the parties manifesting their intention to be bound by its terms." *Southland Corp. v. Potter*, 760 P.2d 320, 322 (Utah App.1988). The conveyance of an easement by agreement also requires consideration. *Coomer v. Chicago & N.W. Transp. Co.*, 91 Ill.App.3d 17, 46 Ill.Dec. 812, 817, 414 N.E.2d 865, 870 (1980). There is no written instrument or evidence of consideration to support the Millers' easement claim. Thus, there is no basis for finding an express easement.

■ Nor is there any evidence in the record to support an oral easement. Moreover, even if there were an oral grant, it would violate the statute of frauds, which requires that "[n]o estate or *interest in real property* . . . nor any trust or power over or concerning real property or in any matter relating thereto, shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing." Utah Code Ann. § 33–5–1 (1943), *repealed by* Utah Code Ann. § 25–5–1 (1989) (emphasis added).[3] Under Utah law, easements must generally comply with the statute of frauds by being reduced to writing. *Wells v. Marcus*, 25 Utah 2d 242, 480 P.2d 129, 130 (1971) (oral grant of easement is "interest in land" governed by the statute of frauds). There is no evidence of a written agreement between Miller and Jensen.

■ Additionally, exceptions to the statute of frauds do not apply. Under the equitable doctrine of part performance, a court will sometimes apply estoppel to enforce an oral or implied agreement which has been partially or fully performed in reliance on the agreement. *Id.* Inasmuch as the Stansfields have not demonstrated either the existence of an oral grant or part performance in reliance, they do not fall within the exception and cannot claim an easement by oral grant.[4]

## CONCLUSION

The trial court did not err in granting summary judgment to Green and enjoining the Stansfields from interfering with the flow of irrigation water across Green's property. The Stansfields did not meet their burden of demonstrating notice of adverse use of the land upon which they claimed an easement. Without notice of adverse use to the property owner, a prescriptive easement could not arise. Moreover, the Stansfields did not present evidence of any oral or written agreement granting an easement to their predecessors in interest.

Accordingly, we affirm.

BILLINGS and JACKSON, JJ., concur.

---

**2.** Section 57–3–2(3) states: "This section does not affect the validity of a document with respect to parties to the document and all other persons who have notice to the document."

**3.** The wording of the former Utah Code Ann. § 33–5–1 is identical to § 25–5–1 of the current code.

**4.** The Stansfields also argue that, at a minimum, the question of Green's knowledge of the ditch is a factual question that should preclude summary judgment. However, we find that because there was no agreement for Green to be aware of, his state of mind is irrelevant and does not present a factual issue that would preclude summary judgment.