2011 UT App 94

**CAROL L. LOWRY IRREVOCABLE TRUST; Fred Lowry, Trustee; and Does 1–10, Plaintiffs and Appellees,**

v.

**G & L ENTERPRISES, LLC; Guy L. Palmer; and Lynda Palmer, Defendants and Appellants.**

**No. 20100130–CA.**

Court of Appeals of Utah.

March 24, 2011.

Douglas L. Neeley, Ephraim, for Appellants.

Preston P. Frischknecht, Logan; and Paul R. Frischknecht, Gunnison, for Appellees.

Before Judges DAVIS, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶1 Defendants G & L Enterprises, LLC, and Guy L. and Lynda Palmer (collectively, Palmer) appeal the trial court's grant to plaintiffs Carol L. Lowry Irrevocable Trust and Fred Lowry (collectively, Lowry) of prescriptive easements in those portions of Palmer's property over which a stream flows (stream bed) and a road crosses. We reverse the grant of a prescriptive easement in the stream bed and affirm the grant of a prescriptive easement over the road.

## BACKGROUND

¶2 Near Manti, Utah, Palmer and Lowry own adjacent parcels of property separated by old state highway 89. The State owns the property that is east of Palmer's property, and the two parcels are separated by new state highway 89. A spring known as Crystal Springs is located on the State's property. Water flows from Crystal Springs, through Palmer's property, and then to Lowry's property by way of the Crystal Springs stream. Lowry has the right to use six-sevenths of the water that flows through the Crystal Springs stream and Palmer has the right to use the remaining one-seventh. A road that connects the old state highway 89 to the new state highway 89 also crosses Palmer's property in front of his home and business (the Road). The parties' dispute arose when Palmer disagreed with Lowry's intention to replace the Crystal Springs stream on Palmer's property with a pipeline. This disagreement eventually involved local law enforcement and the Utah Division of Water Rights. The dispute culminated in Lowry filing this action in an attempt to establish a prescriptive easement over the Road.

¶3 Following a bench trial, the trial court issued a memorandum decision and determined that Lowry was entitled to a prescriptive easement in the stream bed with an accompanying duty to maintain it. The trial court made this determination despite the fact that Lowry had only requested an easement over the Road. The trial court also concluded that Lowry was entitled to a prescriptive easement over the Road as a result of his continuous use of the Road from 1945 to 1965 without any subsequent abandonment. Palmer appeals.

## ISSUES AND STANDARDS OF REVIEW

¶4 Palmer argues that the trial court incorrectly interpreted Utah Code section 57–13a–102 to determine that Lowry was entitled to an easement in the stream bed. *See generally* Utah Code Ann. § 57–13a–102(1)–(2) (2010). Palmer also argues that the trial court incorrectly concluded that Lowry was entitled to an easement over the Road.

[W]hile the conclusion that a prescriptive easement exists is a question of law, it is so fact-dependent that trial courts are generally accorded "a broad measure of discretion when applying the correct legal standard to the given set of facts" and are only

overturned if the trial court's decision was in excess of this broad discretion.

*Lunt v. Lance,* 2008 UT App 192, ¶ 9, 186 P.3d 978 (citations omitted). To the extent that the trial court's determination of an easement in the stream bed involves statutory interpretation, we review the trial court's interpretation for correctness. *See Martinez v. Wells,* 2004 UT App 43, ¶ 18, 88 P.3d 343, *cert. denied,* 98 P.3d 1177 (Utah 2004).

## ANALYSIS

### I. Easement in the Stream Bed

■ ¶ 5 The trial court's factual findings state that water from "a free flowing spring known as the Crystal Springs ... forms a stream that flows ... through the Palmer property and then under old highway 89 to the Lowry property." The trial court then concluded "[t]hat as owner of the Lowry property and owner of approximately six-sevenths of the water rights of Crystal Springs[,] Lowry owns a prescriptive easement for the conveyance of Crystal Springs water through the Palmer property at the location of the Crystal Springs stream pursuant to the provisions of § 57–13a–102...." Palmer argues on appeal that the trial court erred in determining that Utah Code section 57–13a–102 applied to Crystal Springs stream, which is a natural stream.

### A. Palmer Preserved this Issue for Appeal.

■ ¶ 6 Lowry initially contends that Palmer did not preserve this argument for appeal.

To preserve an issue for appellate review, a party must first raise the issue in the trial court, giving that court an opportunity to rule on the issue. Further, for an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it.

*Weiser v. Union Pac. R.R. Co.,* 2010 UT 4, ¶ 14, 247 P.3d 357 (citation and internal quotation marks omitted).

¶ 7 The procedural facts of this case are somewhat unusual. The trial court's ruling ultimately relied on section 57–13a–102, a statute that neither party addressed at trial or throughout the pretrial proceedings. Lowry, as the party who bore the burden of proving the easement, *see Marchant v. Park City,* 788 P.2d 520, 524 (Utah 1990) (determining that the plaintiffs had the "burden in the trial court to establish each and every element of a prescriptive easement claim"), did not argue that this statute provided a legal basis to establish an easement in the stream bed. Instead, Lowry actually advised the trial court that he was not asking it to determine whether he owned an easement in the stream bed. And although the trial court eventually granted Lowry an easement in the stream bed without factual findings to support the statutory elements, that determination was a deviation from the court's view at trial that an easement for the Crystal Springs stream was not an issue before it. Nevertheless, Palmer does not argue that the court erred by considering the stream bed easement issue or by applying a statute that had not been argued at trial, *see generally Haynes Land & Livestock Co. v. Jacob Family Chalk Creek, LLC,* 2010 UT App 112, ¶¶ 26–27, 233 P.3d 529 (determining that a prescriptive easement was neither pleaded nor "tried pursuant to the implied consent of the parties"), but instead argues that the court erred in its legal interpretation and statutory application to the facts of this case.

■ ¶ 8 Despite these unusual facts, we determine that Palmer ultimately preserved the stream bed easement issue because he argued before the trial court that Lowry could not obtain a prescriptive easement in a natural stream in this factual context. Likewise, the trial court acknowledged and rejected Palmer's trial argument in its memorandum decision by stating, "Palmer asserts that prescriptive easements cannot be established for use of a natural stream" and that section 57–13a–102 "is not limited to artificially created waterways." Therefore, although Palmer did not specifically object to the trial court's application of section 57–13a–102, Palmer sufficiently raised the issue of whether Utah law allows a prescriptive easement in a natural stream bed to bring it to the "level of consciousness such that the trial

judge can [and did] consider it."[1] *See Weiser*, 2010 UT 4, ¶ 14, 247 P.3d 357.

**B. The Trial Court Incorrectly Granted an Easement Based on Utah Code Section 57–13a–102.**

■ ¶ 9 The trial court granted an easement in the stream bed pursuant to section 57–13a–102, which states, "A prescriptive easement may be established if a water user has maintained a water conveyance for a period of 20 years during which the use has been: (a) continuous; (b) open and notorious; and (c) adverse." Utah Code Ann. § 57–13a–102(1)(a)–(c) (2010). A "water conveyance" is specifically defined as "a canal, ditch, pipeline, or other means of conveying water." *Id.* § 57–13a–101(1).

■ ¶ 10 Initially, we are asked to determine whether section 57–13a–102 applies to a natural stream.[2] "When interpreting statutes, 'we look first to the plain language of the statute,' and give effect to that language unless it is ambiguous. In doing so, 'our primary goal is to evince the true intent and purpose of the Legislature.'" *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 27, 234 P.3d 1105 (citations omitted); *see also State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795 ("Our primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve."). "[A] statute is ambiguous if the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *R & R Indus. Park, LLC v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 23, 199 P.3d 917 (internal quotation marks omitted); *see also Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 49, 219 P.3d 918. "Further, when evaluating the language at issue 'we assume the legislature used each term advisedly and in accordance with its ordinary meaning.'" *Miller v. State*, 2010 UT App 25, ¶ 12, 226 P.3d 743 (citation omitted); *see also Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035 (stating that to define a statutory

---

1. We reject Lowry's argument on appeal that Palmer was required to file a postjudgment motion to preserve the issue for appeal. Lowry reasons that Palmer should have filed a rule 59(e) or 60(b) motion in the four months between the trial court's memorandum decision and its final order. *See* Utah R. Civ. P. 59(e); *id.* R. 60(b). However, these motions can be filed only after a final judgment has been entered. *See* Utah R. Civ. P. 59(e); *id.* R. 60(b); *Ron Shepherd Ins., Inc. v. Shields*, 882 P.2d 650, 653–54 (Utah 1994) (determining that although a trial court can "reassess its decision at any point prior to entry of a final order or judgment," a rule 59 motion is not appropriate until a final order or judgment is entered); *see generally Gillmor v. Wright*, 850 P.2d 431, 434 (Utah 1993) (stating that rule 60(b) "allows a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court." (internal quotation marks omitted)). In this case, the Judgment and Decree was the final order, not the trial court's memorandum decision. *See* Utah R. Civ. P. 54(a) (" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). From the day the judgment was entered, Palmer had ten days to serve a rule 59(e) motion. *See id.* R. 59(e). However, a rule 59 motion is not required to preserve an issue for appeal if the issue has already been adequately preserved, and we have determined that the issue in this case was. *See Dugan v. Jones*, 724 P.2d 955, 956 (Utah 1986) (per curiam) ("It is settled that .... a rule 59 motion is [not] a condition precedent to appeal from final judgment.... A motion for a new trial is not a prerequisite for an appeal from a judgment; and on such appeal review may be had of any legal error, properly raised, that appears in the record, whether the action be a jury or court action." (first omission and alteration in original) (citations and internal quotation marks omitted)).

2. We note that for purposes of this appeal our review is limited to whether Utah Code section 57–13a–102 can be used to establish a prescriptive easement in the Crystal Springs stream, and thus we express no opinion as to whether Utah's common law provides a basis to establish a prescriptive easement in this situation. *See, e.g., Salisbury v. Rockport Irr. Co.*, 79 Utah 398, 7 P.2d 291, 291–92 (1932) (upholding a grant of a prescriptive easement in an adjacent landowner's natural stream for a landowner to discharge excess or flood waters from the landowner's canal and transport this extra water to the Weber River); *but see Swank v. Sweetwater Irr. & Power Co.*, 15 Idaho 353, 98 P. 297, 299 (1908) ("The fact that a party has a water right gives him no right to enter the lands of others for the purpose of constructing ditches and canals across them.... Ownership of a ditch and the ... right for waters to flow through the ditch may, and often do, exist in different parties. The existence of the one right does not necessarily imply the existence of the other right in the same party.").

term, "we start by examining the ordinary meaning or usually accepted interpretation").

¶ 11 The parties dispute whether the statute's use of the terms "ditch or other means of conveying water" includes a natural stream. The ordinary meaning of ditch is "a long narrow excavation dug in the earth (as for drainage)" or "to dig a ditch in." *Merriam–Webster's Collegiate Dictionary* 365 (11th ed. 2004). This definition implies that some human action must be taken to artificially create a ditch or a water conveyance and is, therefore, distinguishable from a naturally occurring stream. The Division of Water Resources describes the components of an irrigation system, and its use of terms is helpful to determine the ordinary meaning of the terms used in section 57–13a–102.

> An irrigation system must include a water source, a conveyance system, and some way to distribute the water to the crops.... The source of water may be a reservoir, pond, well, stream or river.... A conveyance system allows water to be transferred from a water source[, i.e., a stream,] to the fields. This can be achieved with canals, ditches, and pipes, or any combination of these.

Division of Water Resources, Agricultural Irrigation Systems, *available at* http://www. watereducation.utah.gov/waterinutah/ irrigation/default.asp.

¶ 12 Lowry attempts to create ambiguity by directing us to another Utah statute that

uses the terms "ditch" and "naturally occurring stream" interchangeably. Utah Code section 17B–2a–202 defines "ditch" as "a drain or natural or constructed watercourse." Utah Code Ann. § 17B–2a–202(1) (2009). Title 17B deals specifically with drainage districts. *See id.* § 17B–2a–203. The legislature may define the terms used in title 17B as it sees fit and the different definitions do not create ambiguity in the term as it is defined in section 57–13a–102, especially because the title 17B definition is contrary to the ordinary meaning of the word. Because the ordinary meaning of the word "ditch" is unambiguous, and does not include a natural stream, the trial court erred in applying section 57–13a–102 to create an easement in the land through which the Crystal Springs stream flows.[3]

¶ 13 Finally, the doctrine of ejusdem generis does not support interpreting "other means of conveying water," Utah Code Ann. § 57–13a–101(1) (2010), to include a natural stream. *See In re A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228 ("The doctrine of *ejusdem generis* applies in instances where an inexhaustive enumeration of particular or specific terms is followed by a general term or terms that suggest a class. The doctrine declares that in order to give meaning to the general term, the general term is understood as restricted to include things of the same kind, class, character, or nature as those specifically enumerated, unless there is something to show a

---

**3.** Although we determine that the term "ditch" is unambiguous, this outcome would not be different if we were to examine the legislature's purpose in enacting this statute. Utah Code section 57–13a–102 was enacted in 1997, *see* Utah Code Ann. § 57–13a–102 history (2010), to address concerns generated by this court's holding in *Green v. Stansfield*, 886 P.2d 117 (Utah Ct.App. 1994). *See* Request for Legislation, H.B. 305, 1997 Sess., http://image.le.utah.gov/imaging/ Viewer.asp?Image=3. The *Green* court was asked to determine whether an easement existed over a manmade ditch, not a naturally occurring stream. *See Green*, 886 P.2d at 119–20. The *Green* court determined that a prescriptive easement did not exist because the ditch in question was constructed and used over time with permission. *See id.* at 120–21. Section 57–13a–102 was enacted to establish that if a ditch had been used openly and continuously for twenty years, the nature of the use would presumably be adverse unless evidence was presented to rebut that

presumption. *See* Utah Code Ann. § 57–13a–102(2) ("If Subsections (1)(a) and (b) are established, there is a rebuttable presumption that the use has been adverse.").

The legislative sponsor also stated that state agencies, like the Division of Water Rights and the Division of Water Resources, were concerned that the *Green* holding would upset the Division of Water Resources' practice of financing improvements in water systems and the Division of Water Rights' approval of use applications. *See* Request for Legislation, H.B. 305, 1997 Sess., http://image.le.utah.gov/imaging/ Viewer.asp?Image=3. These concerns do not apply to natural streams because making improvements or alterations to a natural stream is not possible without the permission of the state engineer. *See* Utah Code Ann. § 73–3–29(1) (Supp.2010) ("[A] ... person may not relocate any natural stream channel or alter the beds and banks of any natural stream without first obtaining the written approval of the state engineer.").

contrary intent." (emphasis in original)); *State v. Piep*, 2004 UT App 7, ¶¶ 10–11, 84 P.3d 850 (applying the ejusdem generis doctrine and discussing *In re A.T.*, 2001 UT 82, 34 P.3d 228). Because the terms "canal, ditch, [or] pipeline," used in Utah Code section 57–13a–101(1), are all artificially created watercourses, rather than naturally occurring, we find that the general term "other means of conveying water" is restricted to artificially created water conveyances. *See generally In re A.T.*, 2001 UT 82, ¶ 12, 34 P.3d 228.

¶ 14 Because section 57–13a–102 does not apply to natural streams, we next turn to the trial court's factual findings to determine if they support a conclusion that this case involves either a naturally occurring stream or an artificially created water conveyance. Lowry argues that the trial court made no factual finding that a natural stream existed on Palmer's property. However, the trial court found that the stream originates from "a free flowing spring known as Crystal Springs" and that "[t]he water from Crystal Springs forms a stream that flows ... through the State's property [and] then through" both parties' properties. This finding is sufficient for us to conclude that the Crystal Springs stream is a naturally occurring stream, and because section 57–13a–102 does not apply to natural streams, the trial court incorrectly granted Lowry an easement in the stream bed pursuant to section 57–13a–102.

¶ 15 Furthermore, even if the statute does apply to natural springs, Lowry presented no evidence to establish one of section 57–13a–102's required elements, i.e., that he "maintained" the stream for the requisite twenty years. *See* Utah Code Ann. § 57–13a–102 ("A prescriptive easement may be established if a water user has *maintained* a water conveyance for a period of 20 years ...." (emphasis added)). At oral argument, Lowry's counsel conceded that the only evidence produced at trial was that Fred Lowry looked at the stream. While Lowry cites to the record where he claims evidence was presented that established stream maintenance, that record cite relates only to Fred Lowry's use of the Road to "monitor" the stream, not maintain it. Therefore, Lowry failed to establish that he was entitled to a prescriptive easement in the Crystal Springs stream bed. And finally, because the easement is not valid, neither is the trial court's ruling that Lowry has a duty to maintain the stream bed.

## II. Easement over the Road

¶ 16 Palmer also argues that the trial court erred in granting Lowry a prescriptive easement over the Road that crosses Palmer's property because the trial court "made no findings regarding Lowry's use of the Road after Palmer bought the property in 1989." Even if we were to determine that such findings were required, Palmer has failed to preserve this issue because he did not object at the trial court to the adequacy of the trial court's findings. *See In re K.F.*, 2009 UT 4, ¶ 61, 201 P.3d 985 ("A challenge to the adequacy of the court's findings is notably different from a challenge to the sufficiency of the evidence.... [I]t is ... necessary for a party to challenge and thus afford the trial court 'an opportunity to correct the alleged error' of inadequately detailed findings in order to provide for meaningful appellate review of the court's decision." (citations omitted)); *Stone v. Flint*, 2010 UT App 199, ¶ 6, 238 P.3d 70 (mem.) ("Because [the d]efendants challenge the adequacy of the trial court's findings, they were required to preserve the argument for appeal by objecting on this basis, pointing out to the trial court that the findings were inadequate."); *Pitt v. Taron*, 2009 UT App 113, ¶ 1, 210 P.3d 962 (mem.) (refusing to reach the merits of Pitt's arguments related to factual findings "because he failed to object to the adequacy of the factual findings below"). Thus, Palmer waived this issue on appeal.

¶ 17 In addition, Palmer has failed to provide any legal support for his argument that the twenty years of continuous use required to establish a prescriptive easement must be "up to the present time," and thus we do not address this issue. *See* Utah R.App. P. 24(a)(9). Finally, Palmer suggests that Lowry's testimony was not credible. This court will not judge credibility of wit-

nesses on appeal. *See Rawlings v. Rawlings,* 2010 UT 52, ¶ 45, 240 P.3d 754 ("We are keenly aware that trial courts are in the best position to make determinations about credibility and veracity."); *Lunt v. Lance,* 2008 UT App 192, ¶ 19, 186 P.3d 978 ("[W]e may not substitute our judgment for that of the trial court as trial courts are in a better position to weigh conflicting evidence and evaluate the credibility of witness testimony."). Consequently, we affirm the trial court's grant to Lowry of a prescriptive easement over the Road that crosses Palmer's property.[4]

## CONCLUSION

¶ 18 Because the trial court erred in interpreting Utah Code section 57–13a–102 as applying to a natural stream such as the Crystal Springs stream, we reverse the prescriptive easement in the stream bed and the related duty to maintain the stream bed. We affirm the trial court's determination that Lowry is entitled to a prescriptive easement over the Road that crosses Palmer's property because Palmer failed to object to the adequacy of the trial court's findings and inadequately briefed his argument.

¶ 19 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and J. FREDERIC VOROS JR., Judge.

---

4. Because Palmer's public policy argument lacks merit, we do not address it. *See generally State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (determining that appellate courts "need not analyze and address in writing each and every argument, issue, or claim raised").